IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37406-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JOSEPH EDWARD GEYER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — A judge imposing a term of community custody must select conditions of supervision. This is not merely an administrative task. Community custody conditions must be consistent with the limited authority granted by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. In addition, community custody conditions must be harmonized with a defendant's competing constitutional rights. Although an appellate court affords broad discretion to a sentencing judge's community custody decisions, conditions that stray beyond statutory or constitutional limits are subject to reversal.

Joseph Geyer challenges various community custody conditions imposed in relation to his conviction for attempted rape of a child. He argues all-encompassing restrictions on contact with children and intimate partners impermissibly burden his constitutional rights to marry and parent; broad restrictions on the use of computers

impinge on his constitutional freedom of expression; and prohibitions pertaining to

photography and video equipment, and dangerous weapons and animals, are not crime

related as required by statute. Mr. Geyer's objections to his community custody

conditions are well founded. We therefore grant relief and remand for further

proceedings, consistent with the terms of this decision.

FACTS

Joseph Geyer pleaded guilty to one count of attempted first degree rape of a child

after he was caught in an Internet sting operation conducted by the Washington State

Patrol. Mr. Geyer had communicated with an undercover officer, "Kellie," through an

online dating application. Clerk's Papers (CP) at 40. Kellie and Mr. Geyer discussed

having sexual contact with Kellie's (fictitious) minor children. The two messaged on the

application, texted back and forth, met in person once, and arranged for Mr. Geyer to

meet with the children. When Mr. Geyer arrived at the arranged meeting spot, he was

promptly arrested.

Mr. Geyer told detectives he was interested in Kellie, not her children. However,

he later admitted he had a sexual interest in children and that the detectives would find

large amounts of pornography on his electronic devices. Mr. Geyer also said he conducted

an Internet search for 10-year-old girls in bikinis on the day of his arrest, explaining "he was interested in what to expect [from] a ten year old[']s body." *Id*. at 41.

The trial court accepted Mr. Geyer's guilty plea and imposed an indeterminate sentence of 92.25 months to life of confinement with lifetime community custody. As part of community custody, the court imposed 9 conditions identified as "mandatory." *Id*. at 30. The court also imposed 18 additional conditions described as "other conditions." *Id*. at 31-32. Although the court waived discretionary legal financial obligations (LFOs) based on Mr. Geyer's indigence, it did not strike language on the prewritten judgment and sentence form requiring payment of community custody "supervision fees as determined by" the Washington State Department of Corrections (DOC). *Id*. at 21.

Mr. Geyer appeals seven of the community custody conditions listed as "other conditions." He also challenges the court's imposition of DOC supervision fees.

ANALYSIS

*Applicable legal principles*

Community custody is a form of post-incarceration supervision, monitored by the DOC. RCW 9.94A.030(5). "When a court sentences a person to a term of community custody, RCW 9.94A.703 requires that it impose conditions of community custody." *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 59, 469 P.3d 322 (2020). Trial courts

3

do not have unfettered discretion in choosing community custody conditions. Rather, as is true with all aspects of sentencing, a judge's authority is rooted in statute. In selecting terms of community custody, a court must generally[1] confine itself to the mandatory, waivable, and discretionary conditions set forth at RCW 9.94A.703(1)-(3).

Imposition of discretionary community custody conditions is the most complex aspect of the statute. Some discretionary conditions must "be crime-related." *See* RCW 9.94A.703(3)(c) (treatment or counseling services); RCW 9.94A.703(3)(f) ("crime-related prohibitions"). Others need only have a more loose connection to the offense of conviction. RCW 9.94A.703(3)(b) (refrain from contact with the victim or a specified class of individuals); RCW 9.94A.703(3)(d) (rehabilitative programs or affirmative conduct reasonably related to the offense, the risk of reoffending, or safety of the community). And for some conditions, the wording of the statute does not require any specific connection. RCW 9.94A.703(3)(a) (geographic restrictions); RCW 9.94A.703(3)(e) (alcohol restrictions).

---

[1] When imposing a sentencing alternative, such as a DOSA (drug offender sentencing alternative), a court may have additional authority or flexibility. RCW 9.94A.660(6)(a). In addition, RCW 9.94A.703(4) allows for special conditions in the context of domestic violence and alcohol or drug-related traffic offenses.

Selection of discretionary conditions can raise constitutional concerns.[2] As is true of physical custody, individuals serving community custody are subject to limitations on otherwise-applicable constitutional liberties. *See In re Pers. Restraint of Winton*, 196 Wn.2d 270, 275, 474 P.3d 532 (2020); *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). But not all rights are lost. Judges imposing discretionary community custody must take care[3] that the discretionary community custody conditions not only comply with statutory requirements, but also do not excessively burden a defendant's constitutional rights. *See State v. Johnson*, 197 Wn.2d 740, 746-49, 487 P.3d 893 (2021).

We review a sentencing judge's decision about whether to impose particular community custody conditions for abuse of discretion. *Id.* at 744. A judge abuses their discretion in imposing community custody conditions in violation of the legal parameters set by RCW 9.94A.703. *See State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (abuse of discretion when a judge applies "the wrong legal standard"). It is also an abuse of discretion to impose unconstitutional conditions of community custody. *Johnson*,

---

[2] Theoretically, mandatory and waivable community custody conditions could be subject to constitutional challenge, but that has not held true in practice.

[3] The precise level of constitutional scrutiny is not abundantly clear. *See Winton*, 196 Wn.2d at 280-81 (Gordon McCloud, J., concurring).

5

197 Wn.2d at 744. Once statutory and conditional requirements are met, the abuse of discretion standard requires deference to the trial court. We will not overturn a community custody condition simply because we think the court should have acted differently. The lawful exercise of discretion is a broad power, allocated to the sentencing judge, not the reviewing court.

*Community custody conditions 4 & 7*

Mr. Geyer makes a constitutional challenge to community custody conditions 4 and 7, which read as follows:

4. Have no direct or indirect contact with minors (under the age of 18) without prior permission from supervising community corrections officer and the treating sexual deviancy treatment provider.
. . . .
7. Do not enter into and/or remain in any romantic/sexual relationship with a partner who has minor(s) or has custody/control over any minor(s) (under 18) without prior permission from the supervising community corrections officer and the treating sexual deviancy treatment provider.

CP at 31. Mr. Geyer points out that conditions 4 and 7 make no exceptions for contact with his own wife and children. Without this allowance, Mr. Geyer argues the conditions impermissibly burden his constitutional rights pertaining to family and association. The State concedes Mr. Geyer's argument. We accept this concession.

The right to marry and associate with one's spouse and children are important constitutional freedoms. *State v. Warren*, 165 Wn.2d 17, 34, 195 P.3d 940 (2008).

6

Yet like all rights, there are no absolutes. An individual serving time in custody necessarily loses many associational rights. In addition, after release from custody, the SRA affords judges discretionary authority to order a defendant to "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.703(3)(b). When imposing restrictions on contact under this statute, a sentencing judge must consider a defendant's constitutionally-protected rights of association and impose any restriction in a sensitive way, guided by what is "'reasonably necessary to accomplish the essential needs of the state and public order.'" *Riley*, 121 Wn.2d at 37-38 (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). A trial court abuses its discretion if it imposes a community custody provision that does not comport with constitutional scrutiny. *Johnson*, 197 Wn.2d at 744.

Under the particular facts of this case, the broad restrictions on Mr. Geyer's right to interact with children and intimate partners fail to meet the constitutional balancing test. Mr. Geyer has been married for approximately eight years and has three children. Although Mr. Geyer's offense raises concerns about children in general, there is no indication Mr. Geyer's wife or children played any role whatsoever in his offense conduct. Instead, Mr. Geyer's victims were all fictitious. We recognize the State has a compelling interest in preventing harm to children. Nevertheless, the facts here do not

7

indicate the State's interests will be furthered by restricting Mr. Geyer's contact with his wife and children during the period of community custody. The trial court therefore exceeded its authority in imposing broad restrictions on contact with children and intimate partners that do not account for Mr. Geyer's right to associate with his own wife and children. *See State v. Letourneau*, 100 Wn. App. 424, 441-42, 997 P.2d 436 (2000).

Mr. Geyer does not challenge the State's interest in restricting his contact with minors other than his children (condition 4) or with intimate partners other than his wife (condition 7). Accordingly, as suggested by the State, Mr. Geyer's community custody conditions (4 and 7) should be amended so they are tailored to allow for Mr. Geyer to have contact with his wife and children.

*Community custody conditions 8 & 9*

Mr. Geyer also lodges a constitutional challenge to conditions 8 and 9, which read as follows:

8. Do not purchase, possess or use any computer without prior permission from the supervising community corrections officer and the treating sexual deviancy treatment provider.
9. Do not purchase, possess or use any electronic device, including a cell phone, capable of connecting to the internet without prior permission from the supervising community corrections officer and the treating sexual deviancy treatment provider.

8

CP at 31. According to Mr. Geyer, these two conditions impermissibly burden his freedom of speech, as protected by the federal and state constitutions. U.S. CONST. amend. I; WASH. CONST. art. I, § 5. The State disputes Mr. Geyer's claim, relying on *Johnson*. We agree with Mr. Geyer.

In *Johnson*, the defendant was convicted after a jury trial of attempted second degree rape of a child, attempted commercial sexual abuse of a minor, and communication with a minor for immoral purposes. The charges arose from an undercover sting operation, wherein a law enforcement officer posed as a 13-year-old girl via a Craigslist ad. At sentencing, the trial court imposed community custody conditions including that Mr. Johnson shall "'not use or access the World Wide Web unless specifically authorized by [his community custody officer] through approved filters.'" *Johnson*, 197 Wn.2d at 744 (alteration in original). Mr. Johnson appealed, and the Washington Supreme Court affirmed.

*Johnson*'s analysis of the free speech claim focused on the fact that a filter would be used to balance Mr. Johnson's constitutional freedoms and the State's interest in community safety. The Supreme Court wrote:

> Johnson committed his crimes using the Internet. A proper filter restricting his ability to use the Internet to solicit children or commercial sexual activity will reduce the chance he will recidivate and will also protect the public. While a blanket ban might well reduce his ability to improve

9

himself, a properly chosen filter should not. We encourage Johnson's future community custody officer to have a meaningful conversation with Johnson about appropriate Internet use and to choose filters that will accommodate Johnson's legitimate needs.

*Id.* at 745-46.

This case is factually similar to *Johnson*. Like Mr. Johnson, Mr. Geyer used the Internet to commit his crime. Yet unlike in *Johnson*, the State's supervision of Mr. Geyer's Internet use is not tempered by the use of a filter. Instead, Mr. Geyer's *every action* on a computer or the Internet must be preapproved. This is unnecessarily broad. The use of a filter, tailored to Mr. Geyer's risk to the community,[4] would be a sufficiently narrow way to fulfill the State's goals.

*Community custody conditions 10, 17, & 18*

Mr. Geyer makes statutory challenges to conditions 10, 17, and 18, which read as follows:

10. Do not purchase, possess, or use any photographic or video equipment, including cell phones, without prior permission from the supervising community corrections officer [CCO] and the treating sexual deviancy treatment provider.
. . . .
17. Do not use of possess dangerous weapons as defined to you by RCW 9.41.250 or by your CCO.

---

[4] RCW 9.94A.704(2)(a) requires the DOC to perform an assessment of a defendant's risk of reoffense.

10

18. Do not possess or have upon your property any dangerous animals(s) as defined to you by DOC.

CP at 31-32.

Mr. Geyer points out that the three conditions prohibit forms of conduct that are not specifically addressed by the SRA. As such, their statutory validity turns on whether they constitute crime-related prohibitions pursuant to RCW 9.94A.703(3)(f). Mr. Geyer argues that because his offense did not involve photos, videos, weapons, or animals, conditions 10, 17, and 18 are not crime related. We agree.

A crime-related prohibition is one that "directly relates to the circumstances of the crime for which [an individual] has been convicted." RCW 9.94A.030(10). The condition "need not be identical to the crime of conviction, but there must be 'some basis'" for connecting the condition to the defendant's crime. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)). "A causal relationship is not required." *Sickels*, 14 Wn. App. 2d at 59 (citing *Letourneau*, 100 Wn. App. at 431-32).

The State agrees with Mr. Geyer that conditions 17 (dangerous weapons) and 18 (dangerous animals) are not crime related, but it argues condition 10 is valid because Mr. Geyer admitted to using the Internet to search for photographs of 10-year-old girls in bikinis earlier on the day of his crime. We accept the State's concession with respect to

11

conditions 17 and 18. There is no indication of any weapons or animals being involved in Mr. Geyer's offense conduct. However, we disagree with the State's position regarding condition 10.

There is no evidence Mr. Geyer used photo or video equipment in the commission of his crime. Mr. Geyer may have viewed images of children prior to his offense, but this behavior is not addressed by condition 10. Condition 10 prohibits Mr. Geyer from producing photographs and videos, not from viewing them. To the extent the State has an interest in restricting Mr. Geyer's ability to view inappropriate photos or videos, this is addressed by conditions 8 and 9, discussed above. There is no indication Mr. Geyer has the propensity to produce inappropriate content through the use of photo or video equipment. As such, condition 10 is not crime related.

*DOC supervision fees*

Mr. Geyer contends this court should strike the DOC supervision fees because he is indigent. Because it appears the trial court inadvertently imposed these fees, we remand with instructions to strike.

Supervision fees are governed by RCW 9.94A.703(2)(d), which provides that "[u]nless waived by the court, as part of a term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]." Given

12

that supervision fees are waivable, they are discretionary. However, such fees are not a

"'cost'" under RCW 10.01.160(3) that "'shall not'" be imposed against an indigent

defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020).

Here, the sentencing court waived all discretionary LFOs, other than the

supervision fees, and imposed only mandatory LFOs consistent with its finding of

indigence. The requirement that Mr. Geyer pay supervision fees as determined by the

DOC is buried in a lengthy paragraph, part of the prewritten judgment and sentence form.

The record makes abundantly clear that the court's imposition of supervision fees was

inadvertent. The fees should therefore be struck from the judgment and sentence.

## CONCLUSION

We remand with instructions to modify community custody conditions 4, 7, 8,

and 9, and to strike conditions 10, 17, and 18 and the DOC supervision fees.

_____
Pennell, C.J.

WE CONCUR:

_____  _____
Fearing, J.                      Lawrence-Berrey, J.

13