FILED
11/14/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84234-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JOHN CHRISTOPHER CAREY, | |
| Appellant. | |

ANDRUS, C.J. — John Carey appeals his child molestation and child rape convictions. He contends the trial court denied him the right to present a defense and improperly commented on the evidence. He further identifies several errors in his judgment and sentence. We affirm his convictions but remand for the trial court to correct the identified sentencing errors.

## FACTS

In December 2018, 16-year-old I.C. was filling out a patient survey for a routine medical appointment when she answered affirmatively that someone in her life had made her feel uncomfortable through inappropriate touching. When her doctor questioned her about her response, I.C. disclosed that her paternal uncle, Carey, had done sexual things to her.

Citations and pin cites are based on the Westlaw online version of the cited material.

I.C. indicated that the molestation started when she was 13 years old and eventually escalated from groping to digital rape. Carey repeatedly told I.C. not to tell anyone about the sexual touching. Carey also sent I.C. messages on social media, which included pictures of his genitals.

I.C.'s father, Kevin,[1] had previously noticed that I.C.'s grades were declining, she was losing weight, and she had become withdrawn. And earlier that year, I.C. had stopped going to Carey's house for sleepovers with her cousin. After I.C. disclosed the sexual abuse to her doctor, a mental health counselor to whom she was referred helped I.C. disclose the abuse to Kevin.

On December 28, 2018, after I.C.'s revelations, Kevin confronted Carey via text message. Kevin told Carey that "it has been brought to our attention that you have had inappropriate contact with my daughter. Do not attempt to contact any member of my family. Do not attempt to come near our home. Do not come to dinner tonight. I'm sorry to convey the message in this manner." Carey responded in three consecutive texts: "What are you going to do?" "Please let me know" and "So I can get stuff in order." Kevin explained that I.C. had reported the molestation to her doctor and he thought that a case had been opened the week prior. Carey then said "Ok thank you. Sorry and apologize to her too." Carey's last text was, "It's up to you on charges though, to press or not."

The State introduced screenshots of this text exchange as exhibits at trial. Kevin and I.C.'s mother, Megan, both testified to the authenticity and accuracy of

---

[1] Because I.C.'s parents share a last name with Carey, we refer to them by their first names. We intend no disrespect.

the exhibits. Carey and his girlfriend, Chantel Cannady, however, both testified that this text thread had been altered and that Carey's initial statements denying culpability had been deleted. Cannady and Carey both testified that Carey's initial response to Kevin was "what the [f—k] are you talking about" and "how could you think I would do something like that."

Carey denied the allegations when he testified at trial and said he was "shocked and appalled" when he received Kevin's text. He admitted smacking I.C. on the buttocks on one occasion but denied any further touching or that he ever asked I.C. to touch him in return.

Carey sought to introduce Cannady's testimony that Carey was so shocked and angry when he received Kevin's text that he threw his phone down and said "Are you F---king kidding me." The trial court excluded the statement, concluding it was inadmissible hearsay.

The State charged Carey with one count of second degree child molestation, three counts of third degree child molestation, and three counts of third degree rape of a child. The State also alleged as an aggravating circumstance on all counts that Carey abused a position of trust or confidence in perpetrating these crimes. The jury acquitted Carey of second degree child molestation but found him guilty of all other charges and aggravating circumstances.

Based on the aggravating circumstances, the trial court imposed an exceptional sentence of consecutive 60-month terms, for a total of 120 months. The court also imposed 36 months of community custody following incarceration.

Because Carey is indigent, the trial court indicated its intent to waive all non-mandatory legal financial obligations. The trial court, however, did not strike the community custody supervision fees in the judgment and sentence. The court also imposed, as a condition of community custody, "No unauthorized use of electronic (web) media or devices."

Carey appeals.

## ANALYSIS

### A. Right to Present a Defense

Carey first argues the trial court infringed on his right to present a defense when it excluded evidence of his initial reaction to the sexual assault allegations.

The United States Constitution and the Washington State Constitution guarantee defendants the right to present a defense. U.S. Const., amend. VI, XIV; Wash. Const., art. I, § 3; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994). To determine whether the exclusion of evidence violates a defendant's constitutional right to present a defense, we engage in a two-part analysis. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). First, we review a trial court's evidentiary rulings for an abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). A trial court abuses its discretion if no reasonable person would take the view adopted by the trial court. *Id.* at 59. We then consider de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense. *Id.* at 58.

At trial, Carey sought to admit the statement he made when he first learned of I.C.'s allegations against him. According to Cannady, Carey was outside

- 4 -

smoking when he received a text message from Kevin confronting Carey about the sexual assault. Carey sought to have Cannady testify that Carey showed her the message and said "are you F-ing kidding me." The trial court sustained the State's hearsay objection, concluding that the accusation was not the kind of startling event covered by the excited utterance hearsay exception.

Carey argues the trial court erred in ruling that the evidence was inadmissible under ER 803(a)(2). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Hearsay is inadmissible unless an exception or exclusion applies. ER 802. ER 803(a)(2) provides a hearsay exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Hearsay is admissible under this exception if (1) a startling event occurred, (2) the declarant made the statement while under the stress or excitement of the startling event, and (3) the statement relates to the event. *State v. Magers*, 164 Wn.2d 174, 187-88, 189 P.3d 126 (2008). We review a trial court's ruling on the applicability of a hearsay exception for an abuse of discretion. *State v. Rodriquez*, 187 Wn. App. 922, 939, 352 P.3d 200 (2015).

The trial court excluded Carey's statement because it found that learning about his niece's sexual assault allegations did not constitute a startling event under this rule. Carey disagrees. But we do not need to decide that issue. Even if the court abused its discretion in excluding evidence of Carey's reaction to the accusations, the error was nevertheless harmless. To determine whether a trial court's abuse of discretion warrants reversal, the court applies a nonconstitutional

harmless error standard. *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986). Nonconstitutional error is harmless if, within reasonable probability, it did not affect the verdict. *State v. Zwicker,* 105 Wn.2d 228, 243, 713 P.2d 1101 (1986).

Carey was able to present substantially the same evidence—that he was shocked at I.C.'s accusation and immediately denied the allegations—by other means. Cannady testified that Carey's initial response[2] to Kevin was "what the [f—k] are you talking about" and "how could you think I would do something like that." Carey similarly testified that his response was "WTF are you talking about?" and "how would you think I'd do these things?" Thus, the excluded evidence Carey challenges was cumulative of evidence already before the jury. There is no basis for concluding that a different verdict would have resulted had the court admitted Carey's additional statement of shock and surprise.

Next, we assess the impact of the ruling on Carey's Sixth Amendment rights. *State v. Clark*, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017). In assessing a constitutional challenge to a trial court's evidentiary decision, we must first determine if the evidence is at least minimally relevant. *State v. Orn*, 197 Wn.2d 343, 353, 482 P.3d 913 (2021). "If the evidence is relevant, the reviewing court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63. A court may bar evidence relevant to a theory of defense only where the

---

[2] Cannady and Carey both testified that Cannady wrote out Carey's text message responses to Kevin on Carey's phone, as dictated by Carey.

evidence would undermine the fairness of the trial. *State v. Darden,* 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). The burden is on the State to show that the evidence is "so prejudicial as to disrupt the fairness of the fact-finding process at trial." *State v. Jones,* 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *Darden*, 145 Wn.2d at 622).

There is no dispute that the excluded statement is at least minimally relevant, as it constitutes a denial of the allegations and speaks to Carey's consciousness of guilt. But excluding this evidence did not violate his right to present a defense. The evidence was only minimally probative because the excluded statement was cumulative of other evidence admitted at trial and, as such, Carey's ability to present his theory of the case was unimpaired by its exclusion.

Cannady testified that Carey was shocked and angry when he first received Kevin's messages and learned of I.C.'s accusations. Cannady reportedly responded to Kevin on Carey's behalf because Carey was so shocked he was shaking. Cannady and Carey both testified that Carey's initial response to Kevin was "what the [f—k] are you talking about" and "how could you think I would do something like that." Carey also testified that he was "shocked and appalled" when he learned of the allegations. Thus, Carey presented ample evidence that he was shocked by I.C.'s allegations and that he immediately denied them. From this evidence, Carey argued in closing that, contrary to the State's assertions, he had always denied the allegations.

Carey's interest in presenting additional evidence of his initial reaction to I.C.'s allegations does not overcome the State's interest in avoiding the presentation of cumulative evidence.

B. Improper Comment on the Evidence

Next, Carey argues the trial court improperly commented on the evidence when it instructed the jury that the testimony of a sex crime complainant need not be corroborated.

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This constitutional provision prohibits a judge "from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

We apply a two-step analysis to determine if a judicial comment requires reversal of a conviction. *Levy*, 156 Wn.2d at 723. First, we examine the facts and circumstances of the case to determine whether a court's conduct or remark rises to a comment on the evidence. *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). If we conclude the court made an improper comment on the evidence, we presume the comment is prejudicial, "and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Levy*, 156 Wn.2d at 723.

The trial court instructed the jury that "to convict a person of the crimes of child molestation in the second degree, child molestation in the third degree, or rape of a child in the third degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated."

This instruction accurately reflects Washington law, which states that "it shall not be necessary that the testimony of the alleged victim be corroborated" in order to convict a defendant of a sex offense. RCW 9A.44.020(1). A jury instruction that does no more than accurately state the law pertaining to an issue does not constitute an impermissible comment on the evidence by the trial judge. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015) (citing *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001)).

Washington courts repeatedly have held that non-corroboration jury instructions do not constitute a comment on the evidence. Our Supreme Court addressed this issue in *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949). There, the court concluded that it was not a judicial comment on the evidence to instruct the jury that

> You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

*Id.* at 572; *see State v. Malone,* 20 Wn.App. 712, 714-15, 582 P.2d 883 (1978) (concluding a non-corroboration instruction was not a comment on the evidence).

In *State v. Zimmerman*, 130 Wn. App. 170, 121 P.3d 1216 (2005), Division Two addressed the same issue. The court noted that the non-corroboration instruction is not included within the Washington Pattern Criminal Jury Instructions and the Supreme Court Committee on Jury Instructions recommends against using the instruction. *Id.* at 182. The court nevertheless concluded "[a]lthough we share the Committee's misgivings, we are bound by *Clayton* to hold that the giving of such an instruction is not reversible error." *Id.* at 182-83.

As Carey seems to concede, we are still bound by *Clayton* to hold that this non-corroboration instruction is constitutional.

C.  Sentencing Errors

Finally, Carey raises several errors in his judgment and sentence. First, he contends the community custody condition prohibiting the "unauthorized use of electronic (web) media or devices" unconstitutionally vague and overbroad. A community custody provision that completely prohibits the use of the internet without prior permission is unconstitutionally overbroad and impermissibly burdens a defendant's freedom of speech. *State v. Geyer*, 19 Wn. App. 2d 321, 329, 496 P.3d 322 (2021). The State concedes that the community custody provision identified here is impermissible.

The State argues the appropriate remedy is remand for the trial court to amend the restriction to say "You shall not use or access the internet unless specifically authorized by [the Department of Corrections (DOC)] through approved filters." This language was previously upheld in *State v. Johnson*, 197 Wn.2d 740, 487 P.3d 893 (2021). Carey argues that *Johnson* is distinguishable

on its facts and, as such, this language is not appropriately tailored enough to the facts of Carey's crime. In *Johnson*, the defendant was convicted after he used Craigslist to arrange to have a sexual encounter with someone he believed was a 13-year-old girl. *Id.* at 742-43. Here, by contrast, the internet arguably played a minimal role. We agree that the trial court should determine in the first instance how to narrowly tailor a community custody provision to address "the dangers posed" by Carey. *Id.* at 745.

Next, Carey argues that the court erroneously imposed a community custody supervision fee despite its intent to waive all discretionary fees. Supervision fees are discretionary legal financial obligations and may be waived by the trial court. *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). Here, the State concedes that the trial court intended to waive all discretionary legal financial obligations and that remand is appropriate. We accept this concession and remand for the trial court to strike the supervision fee.

Finally, Carey maintains that the judgment and sentence incorrectly stated that the ending date of each offense was December 12, 2018. As indicated in the information, the correct end date for the offenses was September 30, 2018. The State concedes this error as well. Accordingly, we remand for dates of Carey's offenses to be corrected in the judgment and sentence.

C. Statement of Additional Grounds

Carey raises several issues in a statement of additional grounds. We reject each in turn.

First, he argues that allowing the State to prove a sexual assault offense without requiring corroboration effectively shifts the burden of proof to the defendant to disprove the charges. He asserts that, under such scheme, the State can rely on an "accusation as fact" and need not present further evidence. We disagree. The State is required to prove each element of each offense beyond a reasonable doubt. RCW 9A.44.020(1) merely allows that the testimony from the alleged victim, without additional corroboration, may be accepted or rejected by the jury depending on its determination of that witness's credibility. This statute does not require Carey to present any evidence at all to obtain an acquittal. Carey does not cite to any authority supporting an argument to the contrary.

Next, Carey challenges the admission of his text message conversation with Kevin, which he seems to be arguing was not properly authenticated. He asserts that it was never "investigated or verified" and should have been excluded. But both Kevin and Megan authenticated the text messages at trial and testified to their accuracy. Moreover, Carey provides no authority for the proposition that the State is somehow required to independently verify the accuracy of this information before it can be admitted. To the contrary, any attack on the accuracy of the messages goes to the weight of the evidence, not its admissibility.

Next, Carey challenges the community custody provision dictating that Carey "[m]ay not enter into or frequent establishments or areas where minors congregate without being accompanied by a responsible adult approved by DOC and sex offender treatment provider to include, but not limited to: school grounds, malls, parks, or any other area designated by DOC." He seems to argue that this

- 12 -

is a violation of his First Amendment rights. But he again cites no authority supporting this proposition. A lack of meaningful argument on complex constitutional issues precludes appellate review. See, e.g., *State v. Johnson,* 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992) (declining to address an issue which the defendant failed to adequately brief).

Finally, he argues that his judgment and sentence does not show aggravating circumstances under RCW 9.94A.535(3) justifying the court's decision to run his sentence for count three consecutive to counts two and four. But the jury found that Carey used his position of trust or confidence to facilitate the commission of the crimes here—an aggravating circumstance under RCW 9.94A.535(3)(n)—and, in an appendix to the judgment and sentence, the trial court found that this aggravating circumstance justified the imposition of an exceptional sentence. This method of setting out the court's reasoning is permissible under RCW 9.94A.535, which allows a sentencing court to depart "from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently" in imposing an exceptional sentence.

We affirm Carey's conviction but remand for the trial court to correct the identified errors in the judgment and sentence.


WE CONCUR:

Andrus, C.J.

Coburn, J.                              Mann, J.

- 13 -