# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56886-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEREMY BLAINE FENNEY, | |
| Appellant. | |

CHE, J.— Jeremy Fenney appeals the trial court's order resentencing him to 3,700 months arguing his sentence is clearly excessive; his community custody conditions are vague, overbroad, unrelated to his crimes, or a combination thereof; and the trial court erred in ordering him to pay supervision fees. Fenney was convicted of 44 crimes, including first degree human trafficking, first degree promoting prostitution, first degree rape, first and second degree assault, first degree kidnapping, and first degree robbery. The jury found that aggravating factors existed for the majority of his convictions. After vacating two convictions, the trial court imposed a 4,084 month sentence. Fenney appealed. We vacated four of his convictions and remanded for resentencing. On remand, the trial court imposed an exceptional sentence of 3,700 months, community custody conditions, and legal financial obligations.

We hold (1) Fenney's sentence is not clearly excessive, (2) the community custody condition restricting contact with children under the age of 16 is not reasonably related to the crimes, (3) the community custody condition prohibiting possession of sexually exploitive materials is not unconstitutionally vague, (4) the community custody condition prohibiting possession of sexually explicit materials is not overbroad and is related to the crimes, (5) the community custody condition restricting access to devices where sexually explicit materials may be viewed is reasonably related to the crimes but is unconstitutionally overbroad, (6) the community custody condition restricting access to information pertaining to minors is not reasonably related to the crimes and is unconstitutionally vague, (7) the community custody condition restricting the pursuit of intimate or romantic relationships is unconstitutionally vague, and (8) the amendment to former RCW 9.94A.703(2)(d) (2018) removed the condition allowing for the imposition of community custody supervision fees, and it applies to Fenney's case.

Consequently, we remand for the trial court to strike the community custody condition imposing monthly supervision fees, and to strike or clarify the other community custody conditions consistent with this opinion. We affirm the remainder of Fenney's sentence.

FACTS

Fenney committed a litany of crimes. Most of them surround his relationship with BC, who he began dating in March 2016. Fenney convinced BC to engage in prostitution during their relationship. In 2016, the couple lived together between March and November.

Shortly after BC started living with Fenney, he began to beat, mutilate, burn, cut, sexually abuse, imprison, and threaten her. As a result of some of these incidents, BC had to seek medical treatment from a hospital. Additionally, Fenney raped, assaulted, and robbed KW,

another individual living with him at times. In January 2018, the State charged Fenney, in the fourth amended information, with 45 crimes and a myriad of aggravating factors.[1]

The jury convicted Fenney of every count except attempted murder. The jury found a myriad of aggravating factors and special allegations existed. The chart below specifies the relevant special allegations and aggravating factors.

The trial court later ruled that a first degree rape conviction (count 23) merged with a first degree assault conviction (count 24) and vacated the first degree assault conviction (count 24). The trial court also vacated a first degree unlawful possession of a firearm conviction (count 31) as it encompassed the same criminal conduct as another first degree unlawful possession of a firearm conviction (count 30). The trial court sentenced Fenny to 4,084 months. Fenney appealed.

We held that there was insufficient evidence to support his conviction for robbery (count 19), and that the three kidnapping convictions (counts 6, 17, and 22) merge with the first degree human trafficking conviction (count 1). *State v. Fenney*, No. 520613-II, slip op. at 2 (Wash. Ct. App. Aug. 17, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2052061-3-

---

[1] The charges were as follows: one count of first degree human trafficking, one count of first degree promoting prostitution, four counts of first degree rape, six counts of first degree assault, five counts of felony harassment, three counts of first degree kidnapping, eight counts of second degree assault, two counts of unlawful imprisonment, two count of first degree robbery, one count of first degree attempted murder, one count of fourth degree assault, three counts of first degree unlawful possession of a firearm, one count of unlawful possession of a controlled substance, five counts of felony violation of a court order, one count of witness tampering, and one count of possessing a stolen firearm. 29 counts had at least one aggravating factor— domestic violence, lack of remorse, or deliberate cruelty. 30 counts alleged a firearm sentencing enhancement and one count alleged sexual motivation.

No. 56886-1-II

II%20Unpublished%20Opinion.pdf, review denied, 198 Wn.2d 1037 (2022). We remanded for vacation of the aforementioned convictions and resentencing. *Id*.

On March 14, 2022, the trial court resentenced Fenney. The trial court vacated counts 6, 17, 19, and 22 in compliance with our opinion. The trial court also vacated the unlawful possession of methamphetamine conviction (count 32) due to the parties' stipulation based on *State v. Blake*.[2] Ultimately, Fenney was convicted of 37 offenses. The trial court included the following chart[3] outlining Fenney's convictions in its Findings of Fact and Conclusions of Law to support its exceptional sentence:

| Ct | Charge | Date[4] | Victim | Special | Aggravator |
|----|--------|---------|--------|---------|------------|
| 1 | Human Trafficking 1 | 3/1-11/22 | BLC | FA DV | DV Lack of Remorse Deliberate Cruelty |
| 2 | Promoting Prostitution 1 | 3/1-11/22 | BLC | FA DV | DV Lack of Remorse Deliberate Cruelty |
| 3 | Rape 1 | 3/28-3/29 | BLC | FA DV | DV |
| 4 | Assault 1 | 3/28-3/29 | BLC | FA DV | DV Deliberate Cruelty |
| 5 | Felony Harassment—Threat to Kill | 3/28-3/29 | BLC | FA DV | DV Deliberate Cruelty |
| 7 | Assault 2 | 4/9 | BLC | FA DV | DV Lack of Remorse Deliberate Cruelty |

[2] 197 Wn.2d 170, 481 P.3d 521 (2021).

[3] In the "Special" column, "FA" refers to Fenney being armed with a firearm, a deadly weapon, at the time of the crime under RCW 9.94A.825, and "DV" refers to Fenney having committed the crime against a family or household member, or an intimate partner under RCW 10.99.020(4). In the "Aggravator" column, "DV" indicates the offense satisfied the requirements of RCW 9.94A.535(3)(h).

[4] All dates are for 2016 unless indicated otherwise.

| Ct | Charge | Date[4] | Victim | Special | Aggravator |
|----|--------|---------|--------|---------|------------|
| 8 | Assault 2 | 4/9 | BLC | DV | DV<br>Lack of Remorse<br>Deliberate Cruelty |
| 9 | Felony Harassment—Threat to Kill | 4/9 | BLC | FA<br>DV | DV<br>Lack of Remorse<br>Deliberate Cruelty |
| 10 | Assault 1 | 4/1-6/1 | BLC | FA<br>DV | DV<br>Lack of Remorse<br>Deliberate Cruelty |
| 11 | Felony Harassment—Threat to Kill | 4/1-6/1 | BLC | FA<br>DV | DV<br>Lack of Remorse<br>Deliberate Cruelty |
| 12 | Unlawful Imprisonment | 5/1-5/12 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 13 | Assault 1 | 5/1-5/12 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 14 | Assault 2 | 5/1-5/12 | BLC | FA<br>DV | DV |
| 15 | Rape 1 | 8/20-8/21 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 16 | Assault 2 | 9/1-9/30 | BLC | FA<br>DV | DV<br>Lack of Remorse<br>Deliberate Cruelty |
| 18 | Assault 2 | 9/1-9/30 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 20 | Assault 2 | 10/5-10/6 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 21 | Assault 2 | 10/5-10/6 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 23 | Rape 1 | 10/5-10/6 | BLC | DV | DV<br>Deliberate Cruelty |
| 25 | Assault 1 | 10/5-10/6 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 26 | Felony Harassment—Threat to Kill | 10/5-10/6 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 28 | Assault 1 | 10/6 | BLC | FA<br>DV | DV<br>Deliberate Cruelty |
| 29 | Assault 4 | 11/1-11/22 | BLC | DV | |
| 30 | Unlawful Possession of a Firearm 1 | 10/1-11/22 | | | |

| Ct | Charge | Date[4] | Victim | Special | Aggravator |
|----|--------|---------|--------|---------|------------|
| 33 | Felony Violation of a Court Order | 11/25 | BLC | DV | |
| 34 | Felony Violation of a Court Order | 12/9 | BLC | DV | |
| 35 | Felony Violation of a Court Order | 1/22/**2017** | BLC | DV | |
| 36 | Felony Violation of a Court Order | 1/23/**2017** | BLC | DV | |
| 37 | Felony Violation of a Court Order | 1/23/**2017** | BLC | DV | |
| 38 | Robbery 1 | 7/1-9/30 | KW | FA | |
| 39 | Assault 2 | 7/1-9/30 | KW | FA | |
| 40 | Felony Harassment—Threat to Kill | 7/1-9/30 | KW | FA | |
| 41 | Unlawful Imprisonment | 7/1-9/30 | KW | FA | |
| 42 | Rape 1 | 10/1-11/16 | KW | FA | |
| 43 | Unlawful Possession of a Firearm 1 | 8/1-11/14 | | | |
| 44 | Witness Tampering | 11/22/**2016**-1/31/**2017** | | | |
| 45 | Possession of a Stolen Firearm | 10/1-11/22 | | | |

Clerk's Papers (CP) at 3414-17.

Considering the aggravators and Fenney's offender score, the State determined that Fenney's standard range was 1,998 to 2,316 months. Fenney agreed that the range was correctly calculated. Fenney requested a 2,000 month sentence. After reviewing the evidence, the trial court accepted the State's 3,700 month sentencing recommendation.

In addition to the aggravators found by the jury, the trial court found Fenney had "committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished," citing RCW 9.94A.535(2)(c). CP at 3419. The trial court concluded that each aggravating factor taken together or individually constituted sufficient

6

cause to impose the exceptional sentence and it would impose the exact same sentence even if

only one of the grounds were valid.

As part of the judgment and sentence, the trial court imposed the following challenged

community custody conditions:

> Possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or [community custody officer (CCO)]).
> . . . .
> Possess/access no sexually explicit materials, and/or information pertaining to minors via computer (i.e. internet)
> . . . .
> Have no contact with any children under the age of 16 without the presence of an adult who is knowledgeable of this conviction and who has been approved by Defendant's CCO.

CP at 3435.

> Shall not own, use, or peruse sexually explicit materials or access devices where these material[s] may be viewed, including computers, without authorization from the CCO and/or therapist.
> . . . .
> Shall not pursue intimate, romantic or sexual relationships without authorization from his CCO and/or therapist.

CP at 3442. The trial court also ordered Fenney to pay the "DOC monthly supervision

assessment." CP at 3436 (emphasis omitted).

Fenney appeals.

## ANALYSIS

### I. EXCEPTIONAL SENTENCE

Fenney argues that the trial court erred by imposing a sentence that was clearly excessive

in relation to his crimes as his sentence was longer than the average sentence imposed for

murder. We disagree.

A trial "court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. To that end, if the jury finds beyond a reasonable doubt the existence of certain aggravating circumstances, the court may impose a sentence outside the standard range. RCW 9.94A.535(3). The following, among others, are aggravating circumstances:

> (a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.
> . . . .
> (h) The current offense involved domestic violence, as defined in RCW 10.99.020 . . . and one or more of the following was present:
> (i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;
> . . . .
> (iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.
> . . . .
> (q) The defendant demonstrated or displayed an egregious lack of remorse.

RCW 9.94A.535(3).

Additionally, a trial "court may impose an aggravated exceptional sentence without a finding of fact by a jury under . . . [certain] circumstances." RCW 9.94A.535(2). One such circumstance is that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c).

We may reverse a sentence outside the standard range if:

> (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

8

RCW 9.94A.585(4). We review the length of an exceptional sentence for an abuse of discretion. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). We have considerable latitude in determining whether a sentence is clearly excessive. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007).

Where the sentencing court based its exceptional sentence on proper reasons and supported facts, the sentence is clearly excessive only if the length of the sentence is so long that it shocks our conscience in light of the record. *Id.* at 324. If no reasonable person would adopt the sentence, it shocks the conscience. *Id.* at 324-25. Furthermore, we need not compare the defendant's sentence to the average sentence for his particular crimes or compare his sentence to the average sentence for more serious crimes. *Ritchie*, 126 Wn.2d at 397.

Here, Fenney does not argue that his sentence was based on untenable grounds or reasons, so we address only whether the length of the sentence, in light of the record, shocks our conscience. To that end, Fenney emphasizes that his sentence is substantially longer than the average sentence for murder. But his argument fails because we need not consider comparative sentencing evidence of that sort.

More generally, the jury found the existence of the aggravating circumstance of domestic violence with respect to counts 1-5, 7-16, 18, 20-21, 23, 25-26, and 28. The jury also found the existence of the aggravating circumstance of lack of remorse with respect to counts 1-2, 7-11, and 16. Finally, the jury found the existence of the aggravating circumstance of deliberate cruelty with respect to counts 1-2, 4-5, 7-13, 15-16, 18, 20-21, 23, 25-26, and 28.

Fenney stands convicted of 37 counts, and the jury found aggravating circumstances as to 22 of those counts. Additionally, the trial court independently found that Fenney's multiple

current offenses and high offender score would result in some of the offenses going unpunished. At the end of sentencing, the judge noted, "I did not try this case. I tried one somewhat similar to it compared to yours, and I thought that was the worst case I have ever seen in my entire career. That pales in comparison to the facts in this case." Rep. Proc. at 22.

In light of the record in this case, a 3,700 month exceptional sentence does not shock our conscience. We hold that the trial court did not abuse its discretion in the length of the exceptional sentence.[5]

## II. COMMUNITY CUSTODY CONDITIONS

Fenney argues that the trial court erred by imposing improper community custody conditions that were vague, overbroad, insufficiently related to the circumstances of his crimes, or a combination thereof.

We review the imposition of sentencing conditions for an abuse of discretion. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). The sentencing court abuses its discretion by imposing an unconstitutional sentencing condition. *Id*. The sentencing court also abuses its discretion by imposing a condition that lacks a reasonable relationship to the crime. *State v. Nguyen*, 191 Wn.2d 671, 684, 425 P.3d 847 (2018).

A.    *Contact with Minors*

Fenney argues the community custody condition restricting his contact with minors violated his freedom of association and is insufficiently related to his convictions. The State

---

[5] Fenney argues that if we remand based on a clearly excessive sentence, the trial court should exercise its discretion to order concurrent sentences for his serious violent offenses and "at least some of the firearm enhancements." Br. of Appellant at 8. Because we affirm the length of Fenney's exceptional sentence, we decline to address this argument.

concedes that this condition is not reasonably related to Fenney's convictions. Br. of Resp't at 42. We accept the State's concession.

"As part of any term of community custody, the court may order an offender to: . . . . Refrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.703(3)(b). The "specified class of individuals" must bear some relationship to the crime as "the defendant's freedom of association may be restricted only to the extent it is reasonably necessary to accomplish the essential needs of the state and the public order." *State v. Riles*, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010). For example, in *Riles,* Gholston was convicted of raping a 19-year-old woman. 135 Wn.2d at 349. Our Supreme Court struck a sentencing condition prohibiting Gholston from having contact with any minor children because it bore no reasonable relationship to his crime. *Id.* at 350.

Here, the trial court imposed a community custody condition prohibiting Fenney from "contact with any children under the age of 16 without the presence of an adult who is knowledgeable of this conviction and who has been approved by Defendant's CCO." CP at 3435. None of Fenney's convictions involved a minor. Like in *Riles*, the condition preventing the defendant's contact with minors bears no reasonable relationship to his crimes. Consequently, we accept the State's concession.

We reverse this condition and remand for the trial court to strike the condition.[6]

---

[6] The proper remedy for a community custody condition that is not sufficiently crime-related is to strike the condition. *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

B.    *Sexually Exploitive Materials*

Fenney argues that the trial court erred by prohibiting him from possessing or accessing sexually exploitative materials as the condition is unconstitutionally vague because the term is not defined in the judgment and sentence and there is no statutory definition of sexually exploitative conduct.  We disagree.

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." *Bahl*, 164 Wn.2d at 752.  A statute or community custody condition is unconstitutionally vague where it "'(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Id.* at 752-53 (alteration in original) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

A term is not unconstitutionally vague, even when undefined, when citizens may seek clarification through statements of law in statutes and court rulings as they are presumptively available to all.  *Douglass*, 115 Wn.2d at 180.  And "a restriction implicating First Amendment rights demands a greater degree of specificity and must be reasonably necessary to accomplish the essential needs of the state and public order." *State v, Padilla*, 190 Wn.2d 672,  678, 416 P.3d 712 (2018).

Here, the trial court prohibited Fenney from possessing or accessing "sexually exploitive materials (as defined by Defendant's treating therapist or CCO)."  CP at 3435.  Sexually exploitive material is not defined elsewhere in the judgment and sentence.  The State argues that

such a condition is not unconstitutionally vague because RCW 9.68A.040 defines the crime of

sexual exploitation of a minor.

RCW 9.68A.040 provides,

(1) A person is guilty of sexual exploitation of a minor if the person:
(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or
(c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

And RCW 9.68A.011(4) defines "sexually explicit conduct" as

actual or simulated:
(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
(b) Penetration of the vagina or rectum by any object;
(c) Masturbation;
(d) Sadomasochistic abuse;
(e) Defecation or urination for the purpose of sexual stimulation of the viewer;
(f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

Together, the two statutes provide sufficient notice of what sexually exploitive materials

are prohibited. Ordinary people would not have to guess at the meaning of a condition

prohibiting access or possession of sexually exploitive materials after reviewing these statutes,

which are presumptively available to all. Additionally, the following court opinion provides

13

guidance.  In *Pryse v. Yakima Sch. Dist. No. 7*, a teacher engaged in a variety of improper

conduct, including the following:

> That on several occasions you have made improper physical contact with female assistants. Specifically, you have grabbed or slapped at least one assistant on the buttocks. You have hugged girls against their will. You have placed your hand on one assistant's bare knee, causing her to remove your hand and cover her knee with her dress.
>
> That you advised one girl that the only way she could make up absences from a previous trimester PE class was to be your assistant, that way you could chase her around your office.

30 Wn. App. 16, 18, 632 P.2d 60 (1981).  Division Three characterized the conduct as "sexually

exploitive." *Pryse*, 30 Wn. App. at 24.

Although there is not a precise legal definition of sexually exploitive materials, the

aforementioned statutes and court ruling provide sufficient definiteness.  Consequently, we hold

that the condition prohibiting Fenney from possessing or accessing sexually exploitive materials

is not unconstitutionally vague.

C.      *Sexually Explicit Materials*

Fenney argues that the trial court erred by prohibiting him from possessing or accessing

sexually explicit materials as the prohibition is overbroad and not related to his crimes.  The

State argued that the condition was valid.  After reviewing the State's response, Fenney

conceded that the condition was proper in his reply brief.  In light of the record and *Nguyen*,[7] we

agree the condition is not overbroad and is related to Fenney's crime.

---

[7] 191 Wn.2d at 679-81.

D.      *Access To Devices Where One Can View Sexually Explicit Material*

Fenney argues that the trial court erred by prohibiting him from accessing devices where sexually explicit materials may be viewed without the requisite authorization because the prohibition is overbroad and not related to his crime. The State concedes that this prohibition is overbroad. We accept the State's concession.

"Restrictions on Internet access have both due process and First Amendment implications." *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Consequently, to restrict the defendant's access to the internet, such restrictions must be narrowly tailored to the dangers posed by the defendant. *Id.* at 745.

In *State v. Geyer*, the trial court imposed community custody conditions that prohibited Geyer from possessing or using any computer or electronic device, capable of connecting to the internet, without obtaining permission from his CCO and treatment provider. 19 Wn. App. 2d 321, 329, 496 P.3d 322 (2021). Division Three held that the conditions were unconstitutionally overbroad because they subjected Geyer's every action on a computer or the internet to State supervision. *Id.* at 330. Division Three noted that using a filter, tailored to the defendant's risk to the community, would be a sufficiently narrow manner to achieve the State's aims. *Id.*

Regarding a community custody condition's relationship to the crime, the sentencing court abuses its discretion by imposing a condition that lacks a reasonable relationship to the crime. *Nguyen*, 191 Wn.2d at 684. In *Nguyen*, Nguyen was convicted of child rape and molestation. *Id.* The sentencing court imposed a condition prohibiting him from possessing or viewing "'sexually explicit material.'" *Id.* at 675. Our Supreme Court held that the sentencing court did not abuse its discretion as the condition was reasonably related to his crimes because

"Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges." *Id.* at 686.

Here, the trial court imposed a community custody condition ordering Fenney to "not own, use, or peruse sexually explicit materials or access devices where these material[s] may be viewed, including computers, without authorization from the CCO and/or therapist." CP at 3442. Like in *Nguyen*, this condition was reasonably related to his crimes as Fenney committed sex crimes and, in doing so, established his inability to control his sexual urges. Consequently, we hold that this condition is sufficiently crime related. But this condition subjects Fenney's every action on a computer to State supervision. Consequently, the condition is unconstitutionally overbroad.

We accept the State's concession and remand for the trial court to clarify or strike the condition.

E.      *Possessing or Accessing Information Pertaining To Minors*

Fenney argues that the trial court erred by prohibiting him from accessing or possessing information pertaining to minors via the internet as it is vague, overbroad, and not related to the crimes. The State concedes that the prohibition is vague, overbroad, and not related to his crimes. We accept the State's concession.

Where a community custody condition has the potential to "encompass a wide range of everyday items," it is unconstitutionally vague as it provides insufficient protection against arbitrary enforcement. *Valencia*, 169 Wn.2d at 794. In *Valencia*, our Supreme Court held that a community custody condition prohibiting the possession of "any paraphernalia" that could be used for the ingestion, processing, or sale of controlled substances was unconstitutionally vague

as the condition could prohibit any common place item that could possibly be used as drug paraphernalia, "such as sandwich bags or paper." *Id.* .

As a preliminary matter, we hold that—like the condition that restricted Fenney's contact with minors—this condition restricting his access to "information pertaining to minors" bears no reasonable relationship to Fenney's crimes for the same reasons.[8]

Next, there is no statutory definition of "information pertaining to minors." The phrase information pertaining to minors encompasses a wide variety of innocuous information, like a movie review that mentions child actors or a news article regarding a disease outbreak among children. As such, the condition is also unconstitutionally vague as this condition cannot be defined with sufficient definiteness that ordinary people can understand what conduct is proscribed, and it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Thus, we reverse this condition and remand for the trial court to strike the condition.

F.       *Intimate or Romantic Relationships*

Fenney argues that the trial court erred by prohibiting him from pursuing intimate or romantic relationships without authorization from his CCO or therapist because the prohibition is unconstitutionally vague. The State concedes that the intimate and romantic relationship language is unconstitutionally vague. We accept the State's concession.

The term romantic is unconstitutionally vague as it is "'highly subjective.'" *State v. Casimiro*, 8 Wn. App. 2d 245, 251, 438 P.3d 137 (2019) (quoting *Nguyen*, 191 Wn.2d at 683).

---

[8] The proper remedy for a community custody condition that is not sufficiently crime-related is to strike the condition. *Padilla*, 190 Wn.2d at 683.

Washington courts have not defined "intimate" relationships in any published opinion. Intimate is commonly defined as "of or relating to an inner character or essential nature." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (8th ed. 2002). The term intimate is unconstitutionally vague as the definition as "of or relating to an inner character or essential nature" does not define the prohibited conduct with sufficient definiteness so that an ordinary person can understand what is proscribed. We hold that the term intimate is unconstitutionally vague.

Based on the aforementioned reasoning, we accept the State's concession.[9] Accordingly, we reverse this condition and remand for the trial court to clarify or strike the terms romantic and intimate from the condition.[10]

### III.  COMMUNITY CUSTODY SUPERVISION FEE

Fenney argues that we should strike the community custody condition requiring the payment of supervision fees because the trial court meant to strike that condition. In Fenney's reply brief, he argues that the legislature recently eliminated the imposition of community custody supervision fees, and the elimination applies to his appeal. We agree with Fenney's latter argument.

The imposition of community custody supervision fees used to be governed by former RCW 9.94A.703(2)(d). The legislature recently amended RCW 9.94A.703—as of July 1, 2022—by removing the waivable condition to impose community custody supervision fees on

---

[9] We note that our Supreme Court held the term "dating relationship" was not an unconstitutionally vague term. *Nguyen*, 191 Wn.2d at 683.

[10] Our Supreme Court has remanded for further definition of an unconstitutionally vague community custody term. *Padilla*, 190 Wn.2d at 684.

defendants. *State v. Wemhoff*, 24 Wn. App. 2d 198, 200, 519 P.3d 297 (2022). The amendment applies prospectively to cases on direct appeal. *Id.* at 202.

Here, the trial court imposed a condition ordering Fenney to pay the "DOC monthly supervision assessment." CP at 3436 (emphasis omitted). The legislature removed the community custody supervision fee language from former RCW 9.94A.703. That amendment applies to Fenney's case on direct appeal. We remand for the trial court to strike the obligation to pay community custody supervision fees.

CONCLUSION

We remand for the trial court to strike the community custody condition imposing monthly supervision fees, and to strike or clarify the other community custody conditions consistent with this opinion. We affirm the remainder of Fenney's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.