# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  56915-9-II |
| Respondent, | |
| v. | |
| MICHAEL ANGEL AMARO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Michael A. Amaro appeals his convictions and sentence for two counts of first degree possession of depictions of a minor engaged in sexually explicit conduct—suspect 18 years or older.  Amaro argues that the trial court erred by denying his motion to suppress, imposing three community custody conditions, and imposing community custody supervision fees.

We hold that the trial court did not err by denying Amaro's motion to suppress.  We also hold that the trial court did not err by imposing the challenged community custody condition relating to sexually exploitive materials.  However, the trial court erred by imposing the challenged community custody conditions relating to sexually explicit materials and use of internet/social media, but the remedy of striking the conditions is not necessary for both challenged community custody conditions.  Finally, the community custody supervision fees should stricken.

Accordingly, we affirm Amaro's convictions and the community custody condition prohibiting the possession or access to sexually exploitive materials.  However, we remand for the trial court to (1) provide proper definition and clarification for the community custody condition prohibiting the possession or access to sexually explicit materials and/or information pertaining to

minors via computer and (2) modify and state the factual basis for the community custody condition prohibiting the use of internet or social media without approval, and (3) strike the community custody supervision fees.

FACTS

A.   EVENTS AT PUGET SOUND NAVAL SHIPYARD

Amaro worked at the Puget Sound Naval Shipyard (PSNS). PSNS is a military establishment that employs civilians and maintains classified military information related to national defense.

PSNS prohibits camera capable cell phones and routinely performs security sweeps. When entering PSNS, employees pass the following warning signs: (1) a sign stating that all devices with cameras are prohibited and featuring photos of a cell phone, camera, and iPad with a red line through them; (2) a sign stating that authorized personnel who enter the restricted area consent to the search of personnel and property under their control; and (3) a sign stating that photography in the industrial area is prohibited and violation of that policy is subject to criminal prosecution and/or confiscation of film, media and camera.

PSNS has established procedures and protocols for when security finds camera capable cell phones. PSNS policy states that PSNS will review any photographs that may contain classified material, along with any transmission of classified materials via text messaging or other electronic communication. If PSNS finds classified material on a camera capable cell phone, PSNS will apply a higher level of scrutiny in its review of the cell phone.

2

On September 16, 2021, security personnel entered Amaro's work building and announced they were conducting a security sweep. Security personnel saw Amaro frantically trying to put a cell phone into his backpack. Security personnel asked Amaro to remove the cell phone from his backpack and tell them if it was a camera capable cell phone. Amaro handed the cell phone to security personnel and told them it was a camera capable cell phone.

One security employee, Jennifer Young, told Amaro she was taking custody of his cell phone because it was a violation of PSNS policy to be in possession of a camera capable cell phone. Amaro provided Young with the swipe pattern or password for accessing the phone. Young wrote the swipe pattern or password on an evidence property receipt for storage and review of the phone. Amaro then signed the evidence property custody receipt.

Young reviewed the contents of the cell phone for any contraband related to PSNS security. Young found two photos of classified shipyard documents in the photo section of the phone, which triggered a heightened degree of scrutiny for her review of the phone.

Young then reviewed the text messages on the phone and found a conversation that appeared to be between Amaro and an 11-year-old girl that occurred on September 7, 2021. In the text conversation, the girl said she was happy Amaro wanted to spend time with her even though she is 11 years old. The girl also stated that she would not tell her mother that she and Amaro had sex. Amaro responded in the conversation that he could not believe she was only 11 years old and that he had a good time with her. The text conversation also included a photo of a nude female from the rear who was bent over facing away from the camera. Young did not know the age of the female in the photo.

Young immediately notified her supervisor of the text conversation. PSNS transferred the phone to the Naval Criminal Investigative Service, who then transferred the phone to Washington State Patrol (WSP).

B.     WSP SEARCH WARRANT

WSP Detective Sergeant Jason Greer applied for a search warrant for Amaro's cell phone. The warrant application stated that WSP had probable cause to believe that the cell phone contained evidence of first degree rape of a child and communication with a minor for immoral purposes. The warrant application included a description of the text conversation with the 11-year-old girl, including the nude photo, that Young had found on the cell phone.

A judge granted the search warrant application. The warrant authorized WSP to search the phone for evidence of first degree rape of a child and communication with a minor for immoral purposes.

Detective Sergeant Greer searched Amaro's cell phone pursuant to the warrant and located the text messages with the 11-year-old girl. Detective Sergeant Greer also found dozens of images of minors engaged in sexually explicit conduct, along with hundreds of similar images that had been deleted.

C.     CHARGES AND MOTION TO SUPPRESS

The State charged Amaro with three counts of first degree possession of depictions of a minor engaged in sexually explicit conduct—suspect 18 years or older.

Amaro moved to suppress the evidence found on his cell phone, arguing that Young had unlawfully searched his cell phone, the search warrant application did not establish probable cause

4

for a search, and the search warrant did not specify with particularity the items to be searched. The State opposed the motion, arguing that the PSNS search was lawful, that there was sufficient probable cause for the warrant, and that the warrant was sufficiently particular.

The trial court heard argument and orally denied Amaro's motion to suppress. Amaro provided supplemental briefing and argument on the motion to suppress, and the trial court again denied the motion. The trial court made the following relevant written ruling to support its denial of Amaro's motion to suppress:

> That under the totality of the circumstances, defendant impliedly consented to a search of his cellphone when he entered a level II restricted facility, passed barbed-wire fencing, passed access-controlled points of entry, and passed multiple warning signs that clearly stated that camera capable devices are prohibited, and that authorized entry constituted consent to search of personnel and their property.

Clerk's Papers (CP) at 122. The trial court also ruled that the warrant was properly authorized and that Detective Sergeant Greer properly seized the contested evidence pursuant to the warrant.

D.    STIPULATED TRIAL, VERDICT, AND SENTENCING

The State filed an amended information removing one of the three counts of first degree possession of depictions of a minor engaged in sexually explicit conduct—suspect 18 years or older and charging only two counts of first degree possession of depictions of a minor engaged in sexually explicit conduct—suspect 18 years or older. Amaro declined a jury trial and elected a stipulated trial to the bench.

The stipulated facts stated that WSP found dozens of images of minors engaged in sexually explicit conduct on Amaro's cell phone and the secure digital card inserted in the phone. WSP also found hundreds of deleted images containing similar content. The stipulated facts described

two specific images of minors engaged in sexually explicit conduct but did not provide details

about how the images ended up on Amaro's cell phone. Based on these stipulated facts, the trial

court found Amaro guilty of both counts of first degree possession of depictions of a minor

engaged in sexually explicit conduct—suspect 18 years or older.

The trial court sentenced Amaro to 30 months of total confinement. The trial court also

ordered 36 months of community custody. In an appendix to the judgment and sentence, the trial

court ordered Amaro to comply with the following community custody conditions:

> 7. Possess/access no sexually exploitive materials (as defined by treatment
> therapist or [community corrections officer (CCO)]
>
> . . . .
>
> 9. Possess/access no sexually explicit materials and/or information pertaining to
> minors (under 16) via computer (i.e. internet)
>
> . . . .
>
> 12. Have no use of internet or Social Media without [sex offender treatment
> provider (SOTP)] and CCO's written approval.

CP at 163.

The transcript from the sentencing hearing does not show that the trial court inquired into

Amaro's financial circumstances. The trial court orally stated that it would impose the "standard

financial obligations." Verbatim Rep. of Proc. (May 9, 2022) at 94. On the judgment and sentence,

the trial court checked a box under the financial obligations section that "[a]fter an individualized

inquiry on the record, the Court finds that the Defendant has the current or future ability to pay

legal financial obligations; therefore the Court imposes [a $100.00 DNA (deoxyribonucleic acid)

collection fee]." CP at 150. The trial court did not impose any other discretionary legal financial

obligations in this section. However, the trial court left two boilerplate provisions in place requiring Amaro to "[p]ay DOC monthly supervision assessment" and "[p]ay supervision fees as determined by the [DOC]." CP at 149, 163.

Amaro appeals.

ANALYSIS

A.    MOTION TO SUPPRESS

Amaro argues that the trial court erred by denying his motion to suppress,[1] contending that the evidence on his cell phone was illegally obtained in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. Specifically, Amaro takes issue with portions of the warrant authorizing WSP to search his cell phone. We hold that, under the facts of this case, the trial court did not err by denying Amaro's motion to suppress because Amaro had waived any and all privacy interests in his camera capable cell phone by taking the cell phone into a restricted military facility; therefore, no warrant was required.

Under the Washington Constitution, "[n]o person shall be disturbed in his private affairs . . . without authority of law." WASH. CONST. art. I, § 7. "Article I, section 7 encompasses the privacy expectations protected by the Fourth Amendment to the United States Constitution and, in some cases, may provide greater protection than the Fourth Amendment because its protections

---

[1] Amaro's briefing does not frame the issue as the trial court erring by denying his motion to suppress. However, the substance of Amaro's arguments, along with Amaro's assignments of error to several conclusions of law in the denial of the motion to suppress, make clear that Amaro is arguing that the trial court erred by denying his motion to suppress.

are not confined to the subjective privacy expectations of citizens." *State v. Samalia*, 186 Wn.2d 262, 268, 375 P.3d 1082 (2016).[2]

The "private affairs" protected by article I, section 7 are "'those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from governmental trespass absent a warrant.'" *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). Cell phones and the data they contain are private affairs under article I, section 7. *Samalia*, 186 Wn.2d at 272.

A person may lose a constitutionally protected privacy interest. *Id.* at 273. For example, a person loses their privacy interest in their cell phone when they voluntarily abandon the cell phone. *See id.* at 276 (defendant voluntarily abandoned cell phone when defendant left cell phone behind in stolen vehicle to elude police). Additionally, a person can waive their privacy interest by voluntarily exposing an item to the public or voluntarily disclosing information to a stranger. *Hinton*, 179 Wn.2d at 875. In such situations, no warrant is required for the government to conduct a search of the item. *See Samalia*, 186 Wn.2d at 272-73, 279.

Here, Amaro agreed to work at PSNS, which prohibits camera capable cell phones in the restricted areas, and PSNS has a policy of reviewing any camera capable cell phones that security finds in the restricted areas, with extra scrutiny if security finds classified material on the cell phone. When entering PSNS, Amaro passed several signs warning him that camera capable cell

---

[2] Amaro mentions the Fourth Amendment but makes no Fourth Amendment argument separate from his article I, section 7 challenge. We do not reach any Fourth Amendment argument because we resolve the issue by applying article I, section 7's more protective standards. *See Samalia*, 186 Wn.2d at 270 n.2 (we need not address Fourth Amendment arguments where article I, section 7 provides independent and adequate state grounds to resolve an issue).

phones are prohibited; Amaro entered an area that was clearly marked as any entry constituted a

consent to the search of his person and property; and the area Amaro entered clearly warned that

photography of the restricted industrial area could result in confiscation of his film, media, and

camera. Despite these policies and warning signs, Amaro brought a camera capable cell phone

into the restricted premises, apparently took photos of classified documents, then got caught trying

to put his cell phone back into his backpack during a security sweep. Amaro admitted that his cell

phone was camera capable, handed the cell phone to security personnel, provided security

personnel with the swipe pattern or password for accessing the phone, then signed the evidence

property custody receipt for storage and review of the cell phone where the swipe pattern or

password to access the cell phone was documented. Also, Amaro does not challenge the trial

court's conclusion

> [t]hat under the totality of the circumstances, defendant impliedly consented to a search of his cellphone when he entered a level II restricted facility, passed barbed-wire fencing, passed access-controlled points of entry, and passed multiple warning signs that clearly stated that camera capable devices are prohibited, and that authorized entry constituted consent to search of personnel and their property.

CP at 122.

Under the unique facts of this case, no warrant was required because Amaro, by his

conduct, had waived any privacy interest he had in the contents of the cell phone; thus, no warrant

was necessary. Because the warrant was unnecessary, Amaro's challenges to the warrant fail.[3]

---

[3] The State also argues that no warrant was required because the silver platter doctrine applies. Because we affirm on other grounds, we decline to address this argument.

B.       COMMUNITY CUSTODY CONDITIONS

Amaro argues that the trial court erred by imposing three community custody conditions.[4] We hold that the trial court erred by imposing two of the three challenged community custody conditions.

We review a trial court's statutory authority to impose community custody conditions de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "Any condition imposed in excess of [the court's] statutory grant of power is void." *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). If the trial court acted within its statutory authority, we review the community custody conditions for an abuse of discretion. *Id.* at 326. We reverse such community custody conditions if the conditions are manifestly unreasonable. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). Unconstitutional conditions are manifestly unreasonable. *Id.*

Trial courts are authorized by statute to order offenders to comply with crime-related prohibitions. RCW 9.94A.703(3)(f). A crime-related prohibition is one that is related to the circumstances of the crime for which the offender is sentenced. RCW 9.94A.030(10). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).

---

[4] Amaro challenges these community custody conditions for the first time on appeal. Generally, we may refuse to review any claim that was not raised below. *See* RAP 2.5(a). However, a defendant may challenge an illegal or erroneous sentence, including community custody conditions, for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744-45, 193 P.3d 678 (2008). Therefore, we address Amaro's challenges to his community custody conditions.

A community custody condition is unconstitutionally vague if it (1) does not give an ordinary person sufficient notice to understand what conduct is proscribed or (2) "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Id.* at 678-79 (quoting *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)). Disputed terms are considered in context, and if persons of ordinary intelligence can understand what is prohibited, notwithstanding some possible disagreement, the condition is constitutionally sufficient. *Id.* at 679.

"However, a stricter standard of definiteness applies where the community custody condition prohibits material protected by the First Amendment." *Id.* Additionally, community custody conditions that impinge on free speech rights must be "sensitively imposed in a manner that is 'reasonably necessary to accomplish essential state needs and public order.'" *State v. Johnson*, 4 Wn. App. 2d 352, 358, 421 P.3d 969 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 757-58), *review denied*, 192 Wn.2d 1003 (2018).

1.    Sexually Exploitive Materials as Defined by Treatment Therapist or CCO

Amaro argues that the trial court erred by ordering Amaro to "[p]ossess/access no sexually exploitive materials (as defined by treatment therapist or CCO)." CP at 163. Specifically, Amaro contends that the condition is unconstitutionally vague, allowing the CCO to define "sexually exploitative materials" invites arbitrary enforcement, and the condition violates Amaro's First Amendment rights.

Amaro's challenge rests on the assertion that the condition is not defined in the judgment and sentence and there is no statutory definition upon which Amaro can rely. There are two

statutes that, together, provide a sufficient definition for "sexually exploitive materials." The first statute provides that a person is guilty of sexual exploitation of a minor if they compel a minor to engage in sexually explicit conduct knowing that the conduct will be photographed or part of a live performance; or if they aid, invite, employ, authorize, or cause a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance. RCW 9.68A.040(1)(a), (b). The second statute defines "sexually explicit conduct" as actual or simulated:

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse;
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer . . .; and
> (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4).

Amaro contends that he is unable to rely on these statutory definitions because the plain language of the community custody condition does not use these definitions and instead allows the term to be defined by Amaro's CCO.[5] We disagree.

---

[5] The community custody condition also allows Amaro's treatment therapist to define "sexually exploitive materials," but Amaro does not challenge the treatment therapist's discretion.

Together, the two statutes provide sufficient notice of what "sexually exploitive materials" are prohibited and do not require persons of ordinary intelligence to guess at what is meant by the condition prohibiting access to or possession of "sexually exploitive materials." A term is not unconstitutionally vague, even when undefined, when citizens may seek clarification through statements of law in statutes and court rulings that are presumptively available to all citizens. *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990).

Further, the definitions provided by the two statutes prevent arbitrary enforcement and show that the condition was sensitively imposed and limited to restrictions reasonably necessary for public order or safety. Therefore, we hold that the condition does not invite arbitrary enforcement or violate Amaro's First Amendment rights. Accordingly, we hold that the condition ordering Amaro to "[p]ossess/access no sexually exploitive materials (as defined by treatment therapist or CCO)" is not unconstitutionally vague. CP at 163.

2. Sexually Explicit Materials and/or Information Pertaining to Minors via Computer

Amaro argues that the trial court erred by ordering Amaro to "[p]ossess/access no sexually explicit materials and/or information pertaining to minors (under 16) via computer (i.e. internet)." CP at 163. Specifically, Amaro contends that the condition's language relating to "sexually explicit materials" is unconstitutionally overbroad and unrelated to Amaro's crimes.[6] Amaro separately contends that the condition's language relating to "information pertaining to minors" is

---

[6] Amaro does not argue that this part of the community custody condition is unconstitutionally vague. Additionally, Amaro states in his reply brief that the State "is likely correct that the prohibition against 'sexually explicit materials' is valid." Reply Br. of Appellant at 13 n.6. It is unclear if this statement is a concession and/or withdrawal of Amaro's arguments related to "sexually explicit materials."

13

unconstitutionally vague, overbroad, and not sufficiently related to Amaro's crime. As discussed below, to properly address Amaro's argument regarding unconstitutional vagueness, the community custody condition cannot be viewed piecemeal; rather, the text of the whole community custody condition must be considered. Therefore, we consider the community custody condition as a whole.

The full community custody condition orders Amaro to "[p]ossess/access no sexually explicit materials and/or information pertaining to minors (under 16) via computer (i.e. internet)." CP at 163. The condition's plain language does not indicate whether the descriptor "sexually explicit" applies only to "materials" or also to "information pertaining to minors." Similarly, it is unclear whether "pertaining to minors (under 16)" modifies "sexually explicit materials" or just "information." It is also unclear whether "via computer (i.e. internet)" applies to the whole condition or only to "information pertaining to minors (under 16)."

The community custody condition as written could prohibit Amaro from "possessing/accessing sexually explicit materials" and separately prohibit Amaro from "possessing/accessing information pertaining to minors (under 16) via computer (i.e. internet)." The condition could also prohibit Amaro from "possessing/accessing sexually explicit materials pertaining to minors (under 16) via computer (i.e. internet)" and from "possessing/accessing sexually explicit information pertaining to minors (under 16) via computer (i.e. internet)." Or the condition could prohibit Amaro from "possessing/accessing sexually explicit materials via computer (i.e. internet)" and from "possessing/accessing information pertaining to minors via computer (i.e. internet)." It is anyone's guess as to which interpretation is correct. Based solely

on this ambiguity, this community custody condition does not provide notice to ordinary people of what conduct is proscribed and is therefore unconstitutionally vague.

Additionally, there is no well-accepted definition for "information pertaining to minors," either in statutes or in the dictionary. The community custody condition as written could arguably cover news related to birth rates, articles about teacher strikes, global positioning system directions that happen to include school zones, or even individuals mentioning they are parents of children. This condition does not provide notice to ordinary people of what conduct is proscribed, nor does it provide ascertainable standards of guilt to protect against arbitrary enforcement. Therefore, we hold that part of the condition ordering Amaro to "[p]ossess/access no . . . information pertaining to minors (under 16) via computer (i.e. internet)" is unconstitutionally vague.

The proper remedy for an unconstitutionally vague condition is to remand to the trial court for further definition of the term. *State v. Padilla*, 190 Wn.2d 672, 684, 416 P.3d 712 (2018). Therefore, we reverse the condition and remand to the trial court for clarification and definition.

3. No Use of Internet/Social Media "Without SOTP and CCO's Written Approval"

Amaro argues that the trial court erred by ordering Amaro to "[h]ave no use of internet or Social Media without SOTP and CCO's written approval." CP at 163. Specifically, Amaro contends that the condition is unconstitutionally overbroad and not related to Amaro's crime. We hold that the condition is unconstitutionally overbroad and that the record is insufficient for us to determine whether the condition is crime related.

Community custody conditions that limit fundamental rights must be imposed sensitively to avoid overbreadth. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Conditions

that restrict internet access implicate both due process and the First Amendment. *Id.* "Judges may restrict a convicted defendant's access to the Internet, but those restrictions must be narrowly tailored to the dangers posed by the specific defendant." *Id.* at 745.

In *Johnson*, our Supreme Court considered a community custody condition prohibiting an offender with internet-related child sex crime convictions from using or accessing the internet unless specifically authorized by his CCO through approved filters. *Id.* at 744. The *Johnson* court held that the condition was not overbroad because a proper filter would restrict the offender's ability to solicit children or commercial sexual activity. *Id.* at 745, 747. The *Johnson* court reasoned that "[w]hile a blanket ban might well reduce his ability to improve himself, a properly chosen filter should not." *Id.* at 746. The *Johnson* court distinguished the community custody condition from a community custody condition in another case that did not mention filters and instead broadly prohibited the offender from using internet unless authorized by the offender's treatment provider and CCO. *Id.* at 745 n.1. The *Johnson* court acknowledged that Division One of the Court of Appeals had previously held in an unpublished decision that such a condition is unconstitutionally overbroad. *Id.* Our Supreme Court noted that the community custody condition at issue in *Johnson* was "substantively different" due to its use of filters. *Id.*

Since *Johnson*, the Court of Appeals has held that community custody conditions prohibiting internet use without authorization from the offender's CCO are unconstitutionally overbroad unless they incorporate use of a filter that is tailored to the offender's risk to the community. *See State v. Geyer*, 19 Wn. App. 2d 321, 330, 496 P.3d 322 (2021).

Here, the community custody condition at issue broadly prohibits Amaro from using the internet without written permission from his treatment provider and CCO. The community custody condition makes no mention of filters. Thus, the community custody condition is overbroad as written. Therefore, we remand to the trial court to modify this community custody condition, and we note that the use of a filter tailored to Amaro's risk to the community would be a sufficiently narrow way to fulfill the State's goals. *See id.* at 330, 332.

Additionally, courts may not prohibit an offender from using the internet if his crime lacks a nexus to internet use. *Johnson*, 180 Wn. App. at 330. Here, the stipulated facts serving as the basis for Amaro's convictions state that he had images on his phone of minors engaged in sexually explicit conduct. The stipulated facts do not provide details about the images' sources or how they came to be on Amaro's phone. Therefore, on remand, the trial court should also state the factual basis for the modified condition.

C.     COMMUNITY CUSTODY SUPERVISION FEES

Amaro argues that the trial court erred by ordering Amaro to pay community custody supervision fees. The State concedes that the community custody supervision fees were improperly imposed. It is unclear from our record whether the trial court intended to impose community custody supervision fees.

In such situations, we have previously remanded for the trial court to consider the imposition of community custody supervision fees. *See State v. Spaulding*, 15 Wn. App. 2d 526, 537, 476 P.3d 205 (2020) (remanding for trial court to reevaluate imposition of supervision fees where trial court's intentions were unclear). However, the legislature recently amended RCW

9.94A.703 and removed courts' authority to impose community custody supervision fees. *See* LAWS OF 2022, ch. 29 § 7. Although the amendment became effective on July 1, 2022, we hold that the amendment applies here because Amaro's case was still pending review on the effective date. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018) (new statute applies if a precipitating event occurs after the effective date of the statute). Thus, in light of the amendment to RCW 9.94A.703, we remand for the trial court to strike the community custody supervision fees.

## CONCLUSION

We hold that the trial court did not err by denying Amaro's motion to suppress. We also hold that the trial court did not err by imposing the challenged community custody condition related to "sexually exploitive materials." However, the trial court erred by imposing the two other challenged community custody conditions relating to sexually explicit materials and use of internet/social media, but the remedy of striking the conditions is not necessary for both challenged community custody conditions. Finally, the community custody supervision fees should be stricken.

Accordingly, we affirm Amaro's convictions and the community custody condition related to "sexually exploitive materials." We remand for the trial court to provide proper definition and clarification for the community custody condition related to possessing or accessing "sexually explicit materials and/or information pertaining to minors (under 16) via computer (i.e. internet)," modify and state the factual basis for the community custody condition related to social media/internet use, and strike the community custody supervision fees. CP at 163.

No. 56915-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Price, J.

19