FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 10, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 10, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 102635-8 |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | Filed: <u>April 10, 2025</u> |
| J.H.-M., | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

MADSEN, J.—J.H.-M., a minor, was adjudicated guilty of rape by forcible

compulsion. The sentencing court imposed community custody conditions, one of which

prohibited J.H.-M. from engaging with, among other things, material depicting "sexually

explicit conduct" defined by former RCW 9.68A.011(4) (2010).[1]  J.H.-M. challenges this

prohibition as unconstitutionally vague and overbroad.  Because our prior case law

---

[1] RCW 9.68A.011, as reflected on Washington State's legislative website, lists "sexually explicit conduct" in subsection (7) rather than subsection (4).  The code reviser notes that the definitions in this section have been alphabetized.  RCW 1.08.015(2)(k).  Current session law still codifies the definition for "sexually explicit conduct" in subsection (4).  *See* LAWS OF 2024, ch. 88, § 1(4).  For sake of consistency with the session law, we refer to subsection (4).  Further, former RCW 9.68A.011 was in effect at the time of J.H.-M.'s adjudication and the statute was amended in 2024.  *See id*.  This amendment did not affect the definition of "sexually explicit conduct."  All references to this statute are to the former provision.

defines "sexually explicit" and the condition at issue provides a list of qualifying conduct,

we hold that condition 5 is not vague. Accordingly, we affirm.

BACKGROUND

J.H.-M. was charged with second degree rape by forcible compulsion. After a

fact-finding hearing, the juvenile court adjudicated J.H.-M. guilty. The court imposed a

Special Sex Offender Disposition Alternative with 30-40 weeks of confinement. This

sentence was suspended for a 24-month supervision period. The court also imposed

conditions of supervision, such as maintaining employment and/or enrollment in school,

compliance with treatment requirements, and registration.

The court declined to order a condition prohibiting sexually explicit material

because the pro-tem sentencing judge considered it "vague." Verbatim Rep. of Proc. at

376 ("I am not going to impose the do not possess, use, access, or view any sexually

explicit material. I believe that is vague."). The court stated that the "treatment provider"

would condition J.H.-M.'s access to such material and directed J.H.-M. to follow the

provider's recommendation if they found accessing sexually explicit materials

"inappropriate." *Id*.

The court's written order nevertheless included the prohibition. Clerk's Papers

(CP) at 58. The condition states:

> Do not possess, use, access or view any sexually explicit material as
> defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050
> or *any material depicting any person engaged in sexually explicit conduct
> as defined by RCW 9.68A.011(4)* unless given prior approval by your
> [Certified Sex Offender Treatment Provider].

2

*Id.* (condition 5) (emphasis added).

J.H.-M. appealed, asking the Court of Appeals to strike only the final clause of condition 5 as vague and overbroad.[2]  Initially, the State moved to concede error due to the sentencing judge's verbal statement declining to impose the condition.  Mot. to Concede Error (No. 84443-1-I) at 2-3.  Division One denied the motion and directed the parties to provide briefing on the merits.  Order Denying State's Mot. to Concede Error (No. 84443-1-I).  The court then affirmed the condition, concluding in a published decision that the prohibition on accessing "'any material depicting any person engaged in sexually explicit conduct as defined by [former] RCW 9.68A.011(4)'" was not unconstitutionally vague or overbroad.  *State v. J.H.-M.*, 28 Wn. App. 2d 757, 761-65, 538 P.3d 644 (2023) (quoting CP at 58).

In deciding J.H.-M.'s case, Division One declined to adopt Division Three's reasoning from *In re Personal Restraint of Sickels*, 14 Wn. App. 2d 51, 469 P.3d 322 (2020), and instead followed its own opinion in *State v. Wolff*, No. 82806-1-I (Wash. Ct. App. Oct. 3, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/828061.pdf.  *J.H.-M.*, 28 Wn. App. 2d at 763.  *Sickels* reasoned that *State v. Padilla*, 190 Wn.2d 672, 416 P.3d 712 (2018), controlled the definition of "sexually explicit conduct" in condition 5; thus it—like the condition in *Padilla*—was impermissibly vague.  14 Wn. App. 2d at 65-66.  *Wolff* held that the same condition was not vague based on cases upholding the

---

[2] J.H.-M. contests only the final clause of the provision referencing former RCW 9.68A.011(4). We confine our analysis to that portion of the condition.

constitutionality of the terms "sexually explicit material." *Wolff,* No. 82806-1-I, slip op. at 5-8.

Here, Division One determined that *Sickels'*s reliance on *Padilla* was misplaced. The court reasoned that the condition in *Padilla* did not include a reference to former RCW 9.68A.011(4), and that decision overturned a condition not merely for broadly encompassing First Amendment material, but because it failed to adequately alert the defendant of prohibited conduct. *J.H.-M.*, 28 Wn. App. 2d at 763; U.S. CONST. amend. I. In contrast to *Padilla*, Division One noted that former RCW 9.68A.011(4) listed acts that are sufficiently clear to advise an ordinary person of proscribed conduct. *Id.* at 763-64.

Finding J.H.-M.'s First Amendment concerns were more properly viewed as an "overbreadth challenge," Division One held the condition was not overbroad. *Id.* at 764. Limitations on fundamental rights are permissible if sensitively imposed and narrowly tailored. *Id.* (citing *State v. Johnson*, 197 Wn.2d 740, 744-45, 487 P.3d 893 (2021)). A juvenile court has broad authority to craft a resolution that advances rehabilitation by imposing reasonable conditions that are related to the underlying offense of conviction. *Id.* (citing *State v. K.H.-H.*, 185 Wn.2d 745, 755, 374 P.3d 1141 (2016)). The court reasoned that a condition limiting access to sexually explicit materials for adults or children is related to the goal of rehabilitation. *Id.* at 765. Further, it is logical and reasonable to conclude a person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials" meant only to invoke sexual stimulation. *Id.*

(citing *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 686, 425 P.3d 847 (2018)).  The court

upheld the condition.  *Id.*

J.H.-M. sought review of the Court of Appeals decision here, which was granted. [3]

*State v. J.H.-M*, 2 Wn.3d 1028 (2024).

ANALYSIS

Community custody is one type of postincarceration supervision.  *State v. Geyer*,

19 Wn. App. 2d 321, 325, 496 P.3d 322 (2021) (citing RCW 9.94A.030(5)).  "'When a

court sentences a person to a term of community custody, RCW 9.94A.703 requires that

it impose conditions of community custody.'"  *Id*. (quoting *Sickels*, 14 Wn. App. 2d at

59).  A trial court's authority to impose conditions is rooted in statute.  *Id*.; RCW

9.94A.701.

This court reviews the decision to impose a community custody condition for an

abuse of discretion and will reverse a condition if it is manifestly unreasonable.  *Nguyen*,

191 Wn.2d at 678 (citing *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)).

Imposition of an unconstitutional condition is manifestly unreasonable.  *Id*.

1.  Overbreadth

The line between vagueness and overbreadth is not always clear.  *See Jordan v.

Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) ("Overbreadth and vagueness may overlap");

---

[3] The State noted that J.H.-M.'s probation ended the day after oral argument.  Wash. Sup. Ct. oral arg., *State v. J.H.-M.*, No. 102635-8 (Sept. 10, 2024), at 29 min., 48 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024091124/?eventID=2024091124.  The State asked that we retain and decide the case under the public interest exception to mootness.  *Id.* at 38 min., 33 sec.  We agree.

David Kwok, *Is Vagueness Choking the White-Collar Statute?*, 53 GA. L. REV. 495, 506 (2019) ("While overbreadth and vagueness are conceptually distinct, courts recognize the close relationship between the principles and doctrines."). As this court noted in *Padilla*, a "vague definition does not save the condition from a vagueness challenge if it also encompasses a broad range of speech protected by the First Amendment." 190 Wn.2d at 680-81 (citing *Bahl*, 164 Wn.2d at 756). While recognizing that vagueness and overbreadth may sometimes overlap, *Padilla* discussed the broad definition at issue there in the context of vagueness rather than overbreadth. *See id.* Here, the Court of Appeals concluded J.H.-M.'s argument was more properly analyzed as an overbreadth challenge and concluded that the condition was not overbroad. In his petition for review to this court, however, J.H.-M. does not specifically argue overbreadth. Rather, J.H.-M. contends his overbreadth claim leads directly to a vagueness problem—that corrections officers lack ascertainable standards. Wash. Sup. Ct. oral arg., *State v. J.H.-M.*, No. 102635-8 (Sept. 10, 2024), at 39 min., 14 sec., to 40 min., 12 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024091124/?eventID=2024091124. Because J.H.-M.'s claim is rooted in *Padilla*'s reasoning on vagueness and J.H.-M. does not meaningfully argue overbreadth, we address his claim of vagueness.

2. Vagueness

Citizens must be afforded fair warning of proscribed conduct. WASH. CONST. art. I, § 3; U.S. CONST. amend. XIV; *Bahl*, 164 Wn.2d at 752. A community custody

condition is unconstitutionally vague if it (1) does not define the criminal offense with sufficient definiteness that an ordinary person can understand what conduct is proscribed or permitted or (2) does not provide ascertainable standards to protect against arbitrary enforcement. *Nguyen*, 191 Wn.2d at 678 (quoting *Bahl*, 164 Wn.2d at 752-53).

"'[I]f persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" *Id.* at 679 (most alterations in original) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). A condition that contains a definition may be unconstitutionally vague if the definition is itself vague or overbroad. *In re Pers. Restraint of Ansell*, 1 Wn.3d 882, 893, 533 P.3d 875 (2023) (plurality opinion) (citing *Padilla*, 190 Wn.2d at 674-75). A condition is not "unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [their] actions would be classified as prohibited conduct." *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366, 368 (1988). A stricter standard of definiteness applies, however, where the community custody condition prohibits material protected by the First Amendment. *Bahl*, 164 Wn.2d at 753.

To determine whether a condition is impermissibly vague, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *Id.* at 754. Conditions should be "'read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to [the community corrections officer].'" *Ansell*, 1 Wn.3d at 898 (quoting *Johnson*, 197 Wn.2d

7

at 748). Context includes statutes listed in the condition and a defendant's judgment and sentence. *See id.* at 895, 898 (quoting *Johnson*, 197 Wn.2d at 740); *Nguyen*, 191 Wn.2d at 679; *Bahl*, 164 Wn.2d at 743, 756 ("'[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute'—'[s]uch sources are considered presumptively available to all citizens'" (alterations in original) (internal quotation marks omitted) (quoting *State v. Watson*, 160 Wn.2d 1, 8, 154 P.3d 909 (2007))). We presume the use of different terms in the same condition are intended to have different meanings, view sections of a condition in relation to each other, and, if possible, harmonize the conditions to give effect to each section. *See Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007) ("two different terms in the same statute" are presumed to "have different meanings"); *Millay v. Cam*, 135 Wn.2d 193, 199, 955 P.2d 791 (1998) (statutory provisions "must be viewed in relation to each other and harmonized if possible").

In this case, condition 5 uses three separate terms referencing three separate statutes to describe prohibited material. Specifically, the condition forbids material that is "sexually explicit" in RCW 9.68.130, "erotic" in RCW 9.68.050, and depicting "sexually explicit conduct" in former RCW 9.68A.011(4). CP at 58.

We have considered and upheld the constitutionality of the terms "sexually explicit" in prior cases. The *Bahl* court held that "sexually explicit" was not unconstitutionally vague in the context of prohibiting access to businesses that specialize in sexually explicit or erotic material. 164 Wn.2d at 758-59. After drawing a distinction

8

between "pornographic" material and "sexually explicit" material, *id.* at 757-58, *Bahl* consulted the dictionary to define the phrase "sexually explicit," meaning "'clearly expressed sexual' materials or materials that are unequivocally sexual in nature." *Id.* at 758-59. *Bahl* also looked to RCW 9.68.130(2) for the definition of "sexually explicit"— pictorial material that displays specific sexual acts and exempts works of art or anthropological significance. *Id.* at 759-60. Thus, the court held that the term "sexually explicit," when combined with its dictionary and statutory definitions, was sufficiently definite. *Id.* at 760.

In *Nguyen*, we again affirmed a condition prohibiting engagement with "sexually explicit material." 191 Wn.2d at 679. Interpreting a different section of the same community custody condition at issue here, *Nguyen* relied on *Bahl*'s definition of the term "sexually explicit," as well as the referenced statute (RCW 9.68.130(2)), to conclude that "sexually explicit material" was not unconstitutionally vague. *Nguyen*, 191 Wn.2d at 680.

*Nguyen* and *Bahl* provide context to the challenged portion of condition 5, namely, the definition for "sexually explicit." Applied here, J.H.-M. is prohibited from engaging with sexually explicit conduct, which means "clearly expressed sexual" conduct or conduct that is "unequivocally sexual in nature." *Bahl*, 164 Wn.2d at 759; *see Nguyen*, 191 Wn.2d at 680.

Further, condition 5 references former RCW 9.68A.011(4). As we noted in *Bahl*, former RCW 9.68A.011 "lists a number of *acts* that constitute 'sexually explicit conduct'

9

for the purposes of the chapter." *Bahl*, 164 Wn.2d at 760 n.7 (emphasis added). The statute identifies both acts alone and acts plus intent as examples of sexually explicit conduct. In particular, subsections (a) through (d) list solely acts, and subsections (e) through (g) include acts committed for the purpose of sexually stimulating the viewer. *Compare* former RCW 9.68A.011(4)(c) ("'Sexually explicit conduct' means actual or simulated: . . . Masturbation"), *with* (e) ("'Sexually explicit conduct' means actual or simulated: . . . Defecation or urination for the purpose of sexual stimulation of the viewer."). In addition to requiring an intent (to sexually stimulate the viewer), subsection (f) applies specifically to depictions of minors. RCW 9.68A.011(4)(f) ("Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer.").

Read in this context, the final section of condition 5 is sufficiently definite. The condition explains that J.H.-M. cannot engage with material depicting "sexually explicit conduct," which *Bahl* defines as conduct that is "unequivocally sexual in nature." 164 Wn.2d at 759. Qualifying conduct is found in the cited statute, former RCW 9.68A.011(4). This provision lists acts that, alone or when combined with the intent to sexually stimulate the viewer, constitute "sexually explicit conduct." Certain acts by themselves are strictly prohibited; other acts are prohibited if committed for the purpose of sexual stimulation of the viewer; and one act requires intent to sexually stimulate the viewer and is applicable only to minors.

In short, the definition of "sexually explicit" limits applicable conduct to that which is unequivocally sexual in nature. Former RCW 9.68A.011(4) further narrows the scope of condition 5's listed acts, including those committed for the explicit purpose of sexual stimulation. *See, e.g.*, former RCW 9.68A.011(4)(e) ("Defecation or urination for the purpose of sexual stimulation of the viewer.").

These limitations to the scope of former RCW 9.68A.011(4) also answer J.H.-M.'s claim that condition 5 violates *Padilla*, 190 Wn.2d at 681. In *Padilla*, the court considered a community custody condition prohibiting engagement with "pornographic materials," defined as "'images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts.'" 190 Wn.2d at 679. *Padilla* noted that the definition broadly included movies and television shows that were not created to sexually gratify the viewer, nor would such mainstream movies ordinarily be considered "pornographic material." *Id*. at 681. The court held that the condition and its definition were unconstitutionally vague because they encompassed too much constitutionally protected speech, did not provide adequate notice of proscribed conduct, and impermissibly delegated authority to corrections officers to determine the boundaries of the condition. *Id*. at 681-82.

J.H.-M. argues no difference exists between the definition of "pornographic materials" in *Padilla*, 190 Wn.2d at 679, and "sexually explicit conduct" in former RCW 9.68A.011(4). Suppl. Br. of Pet'r at 13. Specifically, J.H.-M. reasons that both conditions prohibit actual or simulated sexual intercourse or masturbation that occur in

"countless mainstream television shows and movies," which is "precisely the constitutional problem identified in *Padilla*." *Id.* at 14. J.H.-M. focuses principally on *Padilla*'s First Amendment analysis.

*Padilla* is distinguishable, however. Condition 5 and *Padilla* concern different language: "sexually explicit conduct" and "pornographic materials" respectively. *See* CP at 58; *Padilla*, 190 Wn.2d at 678. *Padilla* concluded the term "pornographic materials" was vague despite the presence of a definition because, among other things, the definition was itself vague. *Id.* at 681. The term "pornographic" is distinct from "sexually explicit." *Nguyen*, 191 Wn.2d at 680 ("In *Bahl*, we drew a distinction between the two."). Further, as noted, we have repeatedly upheld the term "sexually explicit material" against vagueness challenges. *Id.*; *Bahl*, 164 Wn.2d at 760; *Ansell*, 1 Wn.3d at 894-96; *see, e.g.*, *United States v. Rearden*, 349 F.3d 608, 619-20 (9th Cir. 2003). And the presence of a statute, here former RCW 9.68A.011(4), "bolsters the conclusion that" the term "sexually explicit material" is not unconstitutionally vague. *Nguyen*, 191 Wn.2d at 680.

In practical terms, J.H.-M. must consult condition 5 in context—measuring potential conduct against the prohibitions defined by case law and examples of such conduct provided by statute. Scientific certainty for when actions constitute proscribed conduct is not required. *Ansell*, 1 Wn.3d at 899 ("Due process does not require that [defendants] should be able to 'predict with complete certainty the exact point at which [their] actions would be classified as prohibited conduct.'" (internal quotation marks

omitted) (quoting *Padilla*, 190 Wn.2d at 677)).  All that is required is that a person of

ordinary intelligence can understand what conduct is prohibited.  *Padilla*, 190 Wn.2d at

677.  In this case, a person of ordinary intelligence can understand that condition 5's final

clause is aimed at preventing J.H.-M. from accessing materials depicting conduct that is

unequivocally sexual in nature, with former RCW 9.68A.011(4) providing examples of

qualifying acts.[4]

J.H.-M. further argues that condition 5 is vague because the definitions of sexually

explicit material in RCW 9.68A.130 and sexually explicit conduct in former RCW

9.68A.011(4) overlap, yet only section .130 exempts works of art and anthropological

significance.  This discrepancy, J.H.-M. claims, results in vagueness because it is not

clear what is prohibited.  We disagree.

Condition 5 uses three separate terms with three separate statutory definitions to

describe prohibited material:  RCW 9.68.130 (defining "sexually explicit" material),

RCW 9.68.050 (defining "erotic" material), and RCW 9.68A.011(4) (defining "sexually

explicit conduct").  RCW 9.68.050(1) and (2) expressly involve erotic material depicting

minors.  RCW 9.68.130 broadly concerns sexually explicit material, does not distinguish

between adults and minors, and includes an exception for works of art or anthropological

significance.  Former RCW 9.68A.011(4) lists sexually explicit acts that relate to minors.

---

[4] Subsections (e) through (g) provide the additional requirement that the enumerated acts must be committed "for the purpose of sexual stimulation of the viewer."

More broadly, chapter 9.68A RCW concerns preventing the sexual exploitation and abuse of children. RCW 9.68A.001. Former RCW 9.68A.011's preamble explains that the listed definitions apply throughout the chapter "[u]nless the context clearly indicates otherwise." A statute's preamble can be "an important guide in determining the intended effect of the operative sections." *Kilian v. Atkinson*, 147 Wn.2d 16, 23, 50 P.3d 638 (2002). Former RCW 9.68A.011's introductory language shows that lawmakers intended the definitions be used with a measure of flexibility and in the context of sexual crimes against minors.

Legislative findings are similarly germane. In RCW 9.68A.001, the legislature found that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance" and made extensive findings regarding the deleterious impact of child exploitation. Significantly for this case, the legislature provided that "[t]he definition of 'sexually explicit conduct' and other operative *definitions* demarcate a line between protected and prohibited conduct and should not inhibit legitimate scientific, medical, or educational activities." RCW 9.68A.001 (emphasis added).

Finally, we view the condition in the context of related documents. Here, J.H.-M.'s judgment and sentence reflect the facts of the underlying criminal offense. As a minor, J.H.-M. raped another minor by forcible compulsion. The offender and victim were under the age of 18, therefore they were legally children. All of this gives context to the prohibitions that would apply.

14

In sum, condition 5 is sufficiently definite. J.H.-M.'s judgment and sentence reflects violence by a minor against a minor. Former RCW 9.68A.011's introductory language states that its definitions may conform to context, the legislature explained that the definitions in former section .011 relate to the protection of children from sexual exploitation, and lawmakers expressed their intent that the definition of sexually explicit conduct does not include conduct that would inhibit legitimate scientific, medical, or educational activities. *See* RCW 9.68A.001.

That RCW 9.68.130 contains an explicit exemption for artistic materials that former subsection .011(4) lacks does not render condition 5 vague. The legislative findings make clear that the protection of children from "sexual exploitation can be accomplished without infringing on a constitutionally protected activity" and stated the definition of "sexually explicit conduct" in former subsection .011(4) does not preclude accessing educational, medical, or scientific material. RCW 9.68A.001. The presence of the statutory definition in former subsection .011(4) "bolsters the conclusion" that the term "sexually explicit material" is sufficiently clear to give notice of what is prohibited. *Nguyen*, 191 Wn.2d at 680.

## CONCLUSION

This court's prior case law defines, and therefore limits, the scope of condition 5's prohibition on "sexually explicit conduct" to that which is "unequivocally sexual in nature." *Bahl*, 164 Wn.2d at 759; *see Nguyen*, 191 Wn.2d at 680. The condition's reference to former RCW 9.68A.011(4) provides examples of specific prohibited acts.

15

The condition sufficiently notifies J.H.-M. of proscribed conduct and provides

ascertainable standards to prevent arbitrary enforcement. *See Nguyen*, 191 Wn.2d at 678.

Accordingly, we affirm the imposition of condition 5 and the Court of Appeals.

_____
Madsen, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____
González, J.

_____

_____
Yu, J.

_____

_____
Whitener, J.

_____
Price, J.P.T.

No. 102635-8

GORDON McCLOUD, J. (dissenting)— The majority does a detailed legal analysis of the sex-related community custody conditions contained in J.H.-M.'s adjudication. Majority at 7-15. It considers the conditions imposed in light of prior legal decisions defining the terms used, in light of statutory definitions of some of the terms used, in light of the statutory preamble, and in light of a court document's description of the criminal conduct, as if that might shed light on what the condition (which does not incorporate prior legal decisions, statutes, or the factual description of the criminal conduct) means. After that detailed legal analysis, the majority concludes that on balance, the terms used in the juvenile adjudication—when read in conjunction with this "context of related [court] documents," statutory definitions, and prior precedents—are not "vague." Majority at 14-15.

They might not be vague to my learned colleagues, with their advanced degrees, legal research skills, command of our prior case law, and ability to use all of our resources to review and consider legal research and documents in the trial court file in this case.

1

But the First Amendment to the United States Constitution does not require us to ask whether the prohibition contained in the judgment is "vague" to accomplished and experienced lawyers and judges. Instead, the First Amendment and article I, section 3 of our state constitution require us to ask whether the prohibition in the judgment is "vague" to a person of ordinary intellect.

In this case, that person is also a juvenile, without a legal degree, and for all we know, without access to Washington's prior legal precedent—the sources on which the majority relies.

The language at issue here might well be "vague" to a person of ordinary intellect, particularly in a juvenile case. And the fact that this is a juvenile case cannot be deemed irrelevant—a child's age is certainly relevant to many other legal decisions about what children in the legal system understand.[1] Without the guidance provided by the prior decisions of this court, the statutory definitions and preamble, and the description of the crime contained in the judgment, there is no way that the *juvenile* defendant in this case could come up with the same detailed

---

[1] *See J.D.B. v. North Carolina*, 564 U.S. 261, 271-81, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (the age of a child subjected to law enforcement questioning is a factor that is relevant to determining whether that individual was in custody and, hence, subject to the rule requiring *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966))).

2

legal analysis that the majority uses. That means that the prohibitions are vague to the person to whom they matter most: the juvenile defendant.

I therefore respectfully dissent.

_____
Gordon McCloud, J.

_____
Montoya-Lewis, J.