# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57744-5-II |
| Respondent, | |
| v. | |
| PAUL THOMAS CLARK, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Paul Thomas Clark appeals a trial court order partially granting Clark's CrR 7.8 motion to modify his community custody conditions.

Clark pleaded guilty to multiple crimes, including incest in the first degree and several counts related to soliciting and distributing child pornography. The trial court imposed numerous community custody conditions that Clark challenged in a timely CrR 7.8 motion. The trial court modified or struck several of the conditions, but otherwise denied Clark's motion.

Clark appeals, arguing that we should strike or modify nine community custody conditions. The State concedes that we should strike or modify several, but not all, of the challenged conditions. Clark also argues that the State breached the plea agreement by arguing to preserve conditions that went beyond those agreed to in the plea agreement, and that judicial estoppel prevented the State from defending the conditions not agreed to in the plea agreement.

We accept the State's concessions and remand for the trial court to strike or modify several community custody conditions as the State concedes. On remand, the trial court should strike

conditions 11 and 15. The trial court should strike the provisions in condition 6 and appendix H condition 17, requiring that Clark not show deception in polygraph exams. The trial court should also strike the term "or drug paraphernalia" from appendix H condition 21. Clerk's Papers (CP) at 63. And the trial court should modify appendix H condition 4 to clarify that Clark may possess controlled substances pursuant to lawfully issued prescriptions. We otherwise affirm.

FACTS

I. BACKGROUND AND GUILTY PLEA

Clark has two sons and was married to a woman who has a daughter. In 2020, a social media website contacted police about Clark's blog. Police investigating the tip found child pornography on Clark's blog as well as explicit messages exchanged between Clark's account and accounts belonging to preteen or teenage girls, which included Clark soliciting sexual images from the girls. From these messages, police also learned that Clark was in an active sexual relationship with his stepdaughter, who was roughly 18 years old at the time and had a developmental disability.

The State charged Clark with three counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree, one count of dealing in depictions of a minor engaged in sexually explicit conduct in the first degree, one count of possession of depictions of a minor engaged in sexually explicit conduct in the second degree, three counts of felonious communication with a minor for immoral purposes, and one count of second degree rape— domestic violence. Clark eventually pleaded guilty to two counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree, one count of possession of depictions of a minor engaged in sexually explicit conduct in the second degree, one count of felonious communication with a minor for immoral purposes, and one count of incest in the first degree.

The plea agreement included numerous proposed community custody conditions. The parties checked a box next to a statement where Clark agreed that he would "[c]omply with all conditions of community custody/placement as imposed by the Department of Corrections (DOC) and his community corrections officer (CCO)." CP at 26. The prosecutor's recommended sentence included an identical directive that Clark comply with all conditions of community custody imposed by the DOC. The DOC then conducted a presentence investigation and recommended additional community custody conditions beyond those negotiated in the plea agreement, which were ultimately listed in appendix H.

At sentencing, the trial court imposed a total of 77 months of confinement followed by 36 months of community custody.

The trial court imposed the community custody conditions from Clark's plea agreement. Relevant to this appeal, condition 3 required Clark to "[h]ave no contact with juveniles under 18 years of age unless under supervision of an adult who is aware of this conviction and the conditions of supervision and approved by his/her therapist and CCO, and [with] notification to parents of the juvenile [for]10 year(s)." CP at 51. Condition 6 stated, "Submit to polygraph examinations to monitor compliance with conditions and/or treatment at the direction of CCO and/or therapist. Must not be found deceptive." CP at 51. Condition 11 read, "Have no contact with juveniles under 18 years of age." CP at 51. Condition 15 stated, "Do not possess dangerous or deadly weapons." CP at 51. And condition 22 directed, "Defendant shall submit to polygraph examinations to monitor compliance with conditions and/or treatment at the direction of CCO and/or therapist. Must not be found deceptive." CP at 52.

The trial court also imposed the DOC's recommended community custody conditions in appendix H of Clark's judgment and sentence. Several conditions were mandatory; one, appendix

H condition 4, required that Clark "not unlawfully possess controlled substances." CP at 63. The trial court also imposed other conditions that were not mandatory. Appendix H condition 13 required Clark to "[s]ubmit to urinalysis testing as directed by CCO." CP at 63. Appendix H condition 17 stated, "Submit to polygraph and plethysmograph examinations as directed by the CCO and must not show deception." CP at 63. Appendix H condition 21 read, "Do not purchase, possess, or use any illegal controlled substance, or drug paraphernalia without the written prescription of a licensed physician." CP at 63. And Appendix H condition 23 stated, "Do not purchase, possess, or consume alcohol or marijuana." CP at 63.

II.    CrR 7.8 MOTION

Several months after his judgment and sentence was entered, Clark filed a timely CrR 7.8 motion to modify his judgment and sentence. In total, Clark argued that the trial court should strike or modify 14 community custody conditions.

The State agreed that several conditions should be modified. Relevant here, the State agreed that conditions 11 and 30 prohibiting all contact with juveniles were duplicative of condition 3, which required supervision for any contact with juveniles. And the State did not oppose modifying condition 3 to allow Clark to have unsupervised contact with his sons, who were 14 and 17 at the time of Clark's sentencing in late 2021. But the State defended other conditions Clark challenged, including those imposed in appendix H.

The trial court partially granted Clark's CrR 7.8 motion, modifying or removing only conditions that the State conceded should be altered. The trial court struck condition 30, but not condition 11. The trial court also modified two conditions at issue in this appeal. Condition 3 was modified to order Clark to "[h]ave no contact with juveniles under 18 years of age, *except his sons*, unless under supervision of an adult who is aware of this conviction and the conditions of

4

supervision and approved by his[] therapist and CCO, and [with] notification to parents of the juvenile [for] 10 year(s)." CP at 126 (emphasis in original). And the trial court modified appendix H condition 17 to require that Clark "[s]ubmit to polygraph examinations as directed by the CCO and must not show deception." CP at 126.

Clark appeals the order on his CrR 7.8 motion. This court originally dismissed Clark's appeal on procedural grounds, but Clark petitioned for review and the Washington Supreme Court remanded with instructions for this court to address the merits of Clark's claims. Order, *State v. Clark*, No. 103483-1 (Wash. Mar. 5, 2025).

Clark initially challenged a total of 12 community custody conditions on appeal. This list included three conditions regulating Internet access that the State conceded should be modified. Because Clark was released from prison to begin community custody in January 2025 and the Internet conditions impaired his ability to obtain employment, the parties with the permission of this court entered an agreed order modifying those conditions pursuant to RAP 7.2(e)(2). Accordingly, this opinion does not address condition 12, condition 23, or appendix H condition 19.

ANALYSIS

I.     COMMUNITY CUSTODY CONDITIONS

Clark challenges nine community custody conditions, arguing that the conditions violate his constitutional right to parent, are not crime related, are unconstitutionally vague, or are not statutorily authorized.

In general, we review a trial court's factual findings regarding a CrR 7.8 motion and the imposition of community custody conditions for abuse of discretion. *State v. Buckman*, 190 Wn.2d 51, 57, 409 P.3d 193 (2018); *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). "Trial

courts may impose crime-related prohibitions while a defendant is in community custody," and we review the factual basis for those conditions under a substantial evidence standard to determine if the trial court abused its discretion. *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

However, we review a trial court's purely legal determinations as well as mixed questions of law and fact de novo. *Buckman*, 190 Wn.2d at 57-58. Accordingly, "[w]e review a trial court's statutory authority to impose a particular community custody condition de novo." *State v. Houck*, 9 Wn. App. 2d 636, 646, 446 P.3d 646 (2019). "A trial court lacks authority to impose a community custody condition unless authorized by the legislature." *Id*. We also review constitutional questions de novo. *Wallmuller*, 194 Wn.2d at 238.

### A.    Conditions Regarding Contact with Juveniles

Condition 3 currently provides that Clark must "[h]ave no contact with juveniles under 18 years of age, *except his sons*, unless under supervision of an adult who is aware of this conviction and the conditions of supervision and approved by his[] therapist and CCO, and [with] notification to parents of the juvenile [for] 10 year(s)." CP at 126. And condition 11 requires that Clark "[h]ave no contact with juveniles under 18 years of age." CP at 51. Clark argues that we should strike condition 11 as redundant and modify condition 3 further to allow contact with any future children Clark may have. We agree that condition 11 should be stricken but we disagree with Clark's challenges to condition 3.

#### 1.    Condition 3

Sentencing conditions that impact fundamental rights such as the right to parent "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). Clark's challenge to

this condition relies on *In re Personal Restraint of Sickels*, 14 Wn. App. 2d 51, 469 P.3d 322 (2020), *abrogated on other grounds by State v. J.H.-M.*, ___ Wn.3d ___, 566 P.3d 847 (2025). In that case, Division Three accepted a State concession that a condition prohibiting contact with all minors should contain an exception for any children the defendant might father in the future. *Id.* at 58. There is no such State concession in this case. Instead, the State responds that the existence of any additional future children is speculative, so Clark's challenge to condition 3 is not ripe for review.

Clark insists that his challenge to condition 3 is ripe for review because this is his only opportunity to modify the condition. He points to *State v. Hubbard*, where the Washington Supreme Court held that a direct appeal or timely collateral attack was the only mechanism for modifying "court-imposed community custody conditions after sentencing without express statutory authority to do so." 1 Wn.3d 439, 441, 527 P.3d 1152 (2023). Importantly, after *Hubbard* was published and after briefing was completed in this case, the legislature amended RCW 9.94A.709 to allow sex offenders to petition for modification of their community custody conditions upon a showing of substantial change of circumstances. LAWS OF 2024, ch. 118, § 3.

The State is correct that an issue is not ripe for review when it requires further factual development. *State v. Bahl*, 164 Wn.2d 739, 749, 193 P.3d 678 (2008). As written, condition 3 allows contact with Clark's two currently existing biological sons (who are now both over 18), and any infringement on Clark's right to a relationship with future minor children is speculative. And unlike the defendant in *Hubbard*, Clark's community custody term is only 36 months long, not for life.[1] Moreover, *Hubbard* does not foreclose future modification to Clark's community

---

[1] The parties do not discuss the fact that condition 3 specifies that it will apply for 10 years, even though Clark will be on community custody for only 36 months.

custody conditions: if Clark fathers an additional child while he is under community custody, he may seek modification of this condition through the mechanism provided by RCW 9.94A.709(2)(a). In sum, we hold that Clark's preenforcement challenge to condition 3 is not ripe under these circumstances.

2.     Condition 11

Next, the State does not respond to Clark's contention that condition 11 is redundant. The State did not object to striking condition 11 below, and the trial court appeared to accept the State's recommendation, and did strike another nearly identical condition. The failure to strike condition 11 thus appears to be a scrivener's error. We remand for the trial court to correct this error by striking condition 11.

B.     Possessing Deadly or Dangerous Weapons

Clark next contends, and the State concedes, that condition 15, which prohibits Clark from possessing dangerous or deadly weapons, is not crime-related and must be stricken. The State also conceded this below, but the trial court did not strike this condition. To be crime related, a community custody condition must "directly relate[] to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). And there is no other statutory basis for imposing this condition. Clark's crimes did not involve deadly or dangerous weapons, so this condition is therefore not crime related. *See State v. Geyer*, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021). We accept the State's concession and remand for the trial court to strike this condition. Because we remand on this basis, we do not address Clark's argument that the condition is unconstitutionally vague.

C.      Deception in Polygraph Examinations

Condition 6, condition 22, and appendix H condition 17 each require that Clark submit to polygraph examinations, and included provisions that he must not show deception in the examinations. Clark asserts, and the State concedes, that condition 6 and appendix H condition 17 should be modified to remove the requirement that Clark must not show deception during polygraph examinations.[2] Clark does not challenge the requirement that he submit to polygraph examinations in the first place, only the provision that makes being found deceptive a community custody violation. The State points to DOC policy that "[s]ex offender treatment providers shall not base decisions solely on the results of the polygraph examination" as a basis for striking the provision. WAC 246-930-310(7)(b).

We accept the State's concession. On remand, the trial court should strike the provisions requiring that Clark must not show deception during polygraph exams from condition 6 and appendix H condition 17. Because condition 22 contains the same provision, but was not challenged on appeal, the parties may argue whether that condition should likewise be modified before the trial court on remand.

D.      Conditions Regarding Controlled Substances

Clark challenges three appendix H conditions regarding alcohol and controlled substances. Appendix H condition 4 prohibits him from "unlawfully possess[ing] controlled substances." CP at 63. Appendix H condition 21 requires that he not "purchase, possess, or use any illegal controlled substance, or drug paraphernalia without the written prescription of a licensed

---

[2] Clark did not challenge condition 6 in his original CrR 7.8 motion, but that condition's language is basically identical to appendix H condition 17, which Clark did challenge below. Condition 22 is also substantively identical to the other two polygraph exam conditions. No party mentions Condition 22 in any of the briefing, nor was it challenged below.

physician." CP at 63. And Appendix H condition 23 requires that he "not purchase, possess, or consume alcohol or marijuana." CP at 63. Clark primarily argues that these conditions are not crime related. He also contends that there should be an exception for legal cannabis use pursuant to a medical authorization.

The State concedes that the appendix H condition 21 provision about possessing drug paraphernalia should be stricken because "[t]he possession of drug paraphernalia, in and of itself, is not a crime, and is not a valid monitoring tool even if a defendant is prohibited from consuming or possessing controlled substances." Br. of Resp't at 9. We accept the State's concession. There is no statutory authority for prohibiting the possession of drug paraphernalia, and Clark's offenses did not involve drug paraphernalia. On remand, the trial court should strike the term "or drug paraphernalia" from appendix H condition 21.

Next, the State argues that appendix H condition 4 and the remainder of appendix H condition 21, which each prohibit Clark from possessing or consuming controlled or illegal substances, are statutorily mandated unless waived by the court. The State similarly defends appendix H condition 23's prohibition on cannabis use because cannabis is a controlled substance, and a medical authorization to use cannabis is not a prescription. The State also argues that the portion of appendix H condition 23 regarding alcohol is statutorily authorized for any conviction and need not be crime-related.

RCW 9.94A.703(2)(c) provides that, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." Cannabis is a controlled substance, and an authorization to use medical cannabis is *not* a prescription. RCW 69.50.204(c)(17); RCW 69.51A.010(1)(b). And, "[a]s part of any term of community custody, the

10

court may order an offender to . . . [r]efrain from possessing or consuming alcohol." RCW 9.94A.703(3)(e). Thus, a trial court *must* prohibit any offender from possessing or consuming cannabis and other controlled substances without a prescription and *may* prohibit the offender from possessing or consuming alcohol. The fact that these conditions are not crime related is irrelevant because they are authorized by statute. *State v. Greatreaks*, 34 Wn. App. 2d 173, 186, 566 P.3d 886 (2025), *petition for review filed*, No. 104105-5.

In sum, appendix H condition 23 is valid as written. But we remand for the trial court to modify appendix H condition 4 to clarify that Clark may possess controlled substances pursuant to lawfully issued prescriptions, and to strike the drug paraphernalia provision from appendix H condition 21.

E.      Urinalysis

Clark argues that appendix H condition 13, which requires him to "[s]ubmit to urinalysis testing as directed by [his] CCO," violates his constitutional right to privacy. Br. of Appellant at 55 (quoting CP at 63). He argues that the condition is not narrowly tailored and that drugs and alcohol did not play a role in his crimes.

The Supreme Court has explained that both breath analysis and urinalysis conditions are constitutional as long as they are narrowly tailored to monitor compliance with other valid conditions prohibiting the use of alcohol and/or drugs. *State v. Nelson*, ___ Wn.3d ___ 565 P.3d 906, 917 (2025). The conditions in that case specifically required the defendant to "[s]ubmit to breathalyzer testing or any other testing to ensure no alcohol consumption" and "[s]ubmit to urinalysis testing or other testing to ensure drug-free status." *Id*. at 910.

Testing to monitor compliance with valid conditions prohibiting the use of alcohol and controlled substances is appropriate. *Id*. at 919. As discussed above, the conditions prohibiting

Clark from consuming alcohol, cannabis, and other controlled substances without a prescription are valid. To ensure compliance with these lawfully imposed conditions, the trial court also ordered Clark to "[s]ubmit to urinalysis testing as directed by [his] CCO." CP at 63. In context, this condition is narrowly tailored to monitor Clark's compliance with the valid conditions prohibiting him from consuming alcohol or controlled substances. The trial court did not abuse its discretion by imposing appendix H condition 13.

## II. STATE RESPONSE TO CLARK'S CrR 7.8 MOTION

Clark argues that the State breached the plea agreement when it responded to his CrR 7.8 motion by defending the appendix H conditions which were not included in the original plea agreement. He also contends that the State was judicially estopped from defending the appendix H conditions. We disagree.

Clark first insists that the State "undercut the terms of the plea agreement" by defending the appendix H conditions in response to Clark's CrR 7.8 motion. Clark asserts that the State's breach entitles him to a de novo hearing on his CrR 7.8 motion.

"A prosecutor is obliged to fulfill the State's duty under the plea agreement by making the promised sentencing recommendation." *State v. Sledge*, 133 Wn.2d 828, 840, 947 P.2d 1199 (1997). "The State's duty of good faith requires that it not undercut the terms of the agreement explicitly or implicitly by conduct evidencing an intent to circumvent the terms of the plea agreement." *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006). "We review a prosecutor's actions and comments objectively from the sentencing record as a whole to determine whether the plea agreement was breached." *Id*.

Clark's argument ignores that, in the plea agreement, he agreed to "[c]omply with all conditions of community custody/placement as imposed by the . . . DOC." CP at 26. Here, the

DOC recommended additional community custody conditions beyond those negotiated in the plea agreement, the trial court imposed those conditions in appendix H, and the State then defended the imposition of many of those appendix H conditions in response to Clark's CrR 7.8 motion. Because Clark agreed to comply with community custody conditions imposed by the DOC in his plea agreement, the State did not breach the plea agreement by defending those conditions. Clark's breach argument fails.

Finally, Clark argues that the State was judicially estopped from defending the appendix H conditions in response to Clark's CrR 7.8 motion. He reasons that the State's position was "clearly inconsistent with the position it took in entering the plea agreement," that the trial court was misled by the State's original position, and that the State received an unfair advantage by convincing Clark to plead guilty and then advocating for the appendix H conditions. Br. of Appellant at 73-74.

Judicial estoppel precludes a party from asserting one position in a court proceeding and then taking a clearly inconsistent position in a later proceeding. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007). The key factors for a court to consider are whether the two positions are clearly inconsistent, whether judicial acceptance of the inconsistent position would create a perception that one of the courts was misled, and whether the party asserting the inconsistent position derives an unfair advantage from the change in position. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008). But as discussed above, the plea agreement endorsed the DOC-recommended community custody conditions. Therefore, the State did not take a clearly inconsistent position by advocating for the plea agreement and then defending the DOC conditions, which, pursuant to the plea agreement, Clark was required to comply with. Thus, judicial estoppel does not apply.

CONCLUSION

We remand for the trial court to strike conditions 11 and 15. The trial court should also strike the "must not show deception" provisions of condition 6 and appendix H condition 17. On remand before the trial court, the parties may argue the deception provision in condition 22. And the trial court should strike the term "or drug paraphernalia" from appendix H condition 21. Finally, the trial court should modify appendix H condition 4 to clarify that Clark may possess controlled substances pursuant to lawfully issued prescriptions. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Che, J.